[Civ. No. 11892. First Dist., Div. One. Feb. 10, 1942.]

POMONA CEMETERY ASSOCIATION (a Nonprofit Cemetery Association), Respondent, v. BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES et al., Appellants.

J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellants.

Allard, Whyte & Brownsberger, Holbrook & Tarr and W. Sumner Holbrook, Jr., for Respondent.

WARD, J.—This appeal is from a judgment in favor of petitioner, a non-profit association engaged in conducting a cemetery, in a proceeding in which it sought a writ of mandate commanding the respondents—Board of Supervisors of the County of Los Angeles and its several members—to cancel assessments theretofore levied upon the property of petitioner used in conducting said cemetery, and also commanding the county counsel to consent thereto in writing.

The property includes five contiguous parcels. The trial court found that one had not been platted, improved or developed in any manner as a burial ground, and that it was not enclosed as part of the cemetery. The taxability of this parcel was upheld. As to the other four, it found that at the time of the levy of the assessments they were and at all times since have been used and held exclusively for the burial of the human dead; that no part thereof has ever been used for profit, and that such parcels thus come within the exemption provided in section 1b of art. XIII of the state Constitution, which reads as follows: ''All property used or held exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead, except as used or held for profit, shall be free from taxation and local assessment.''

The county assessor in assessing some portions of the land and improvements belonging to the cemetery association adopted the following method: In the case of the land intended for burial purposes, although in most cases the lots or rights to interment were scattered and not contiguous, he placed a value upon such as were undisposed of by the association based upon the proportion of such lots to the total area; in connection with a new mausoleum, a value was placed upon the building and site based upon the percentage which the content of the unsold crypts and niches therein bore to the total cubical content of the building, notwithstanding some of them were owned by one Hughes, who received as his sole compensation for the erection and construction of the building the right to dispose of interment rights and privileges therein. The assessment on an old mausoleum, one wing of which is used for the purpose of cremation and to house tools and equipment, was arrived at in a similar manner, the value of its site having been previously declared by court decision to be exempt. The site of a joint office and public

lavatory building was assessed, as were the improvements thereon, office equipment and certain "merchandise." The cemetery equipment, consisting of trucks, power mowers, casket lowering devices and materials used by the association in connection with the care and maintenance of the entire cemetery, was assessed upon a percentage basis, the foundation of which was the proportion which the unsold interment rights bore to the entire cemetery. The cemetery association questions the propriety of the assessment of this outdoor equipment, but the action is to cancel the entire assessment.

In justification of the judgment canceling the assessments and taxes specifically set forth in the findings, the association contends that the description of the property assessed is insufficient and incomplete; that assessments indivisibly combine property admittedly exempt and that claimed to be taxable; that the assessment of the lands and improvements could not be enforced by a tax sale; that the assessment of the entire unsold space in the new mausoleum to the association was improper in that Hughes, the builder, held the right to dispose of a large portion of interment rights therein; that the exempt character of a portion of the property involved on this appeal has been previously determined and is *res judicata* between the parties, and finally, that the unsold lots, crypts and niches were used or held exclusively for purposes embraced within the constitutional exemption. A goodly portion of the arguments by the county is also directed to the above points, but the main question for determination on this appeal is, as stated by appellants, "whether grave sites and mausoleum space and personal property held by a cemetery corporation for sale, but with the anticipation that any purchasers will use or will hold for burial purposes can, while it yet continues the property of and in the hands of the cemetery corporation, constitute 'property used or held exclusively for the burial or other permanent deposit of the human dead,' and whether personal property in common use as to both sold and unsold grave space constitutes property 'used or held for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead.' "

Appellants' first contention is that a particular finding of the trial court which is in the language of the constitutional provision is a conclusion of law or a finding of ultimate fact, and is at variance with the conclusions drawn from specific

facts found. On this appeal, for the purpose of considering all the facts and circumstances relative to the main question, we will assume that such finding does not preclude consideration of whether property of the nature shown by the specific findings is in law exempt.

The association contends that the assessment was of physical property. The appellants claim that it was of the easement of privilege of interment, and that there was no direct finding against the taxability of a right of interment held for sale. The findings recognized that it was the right to bury, in the form of an easement, that was conveyed or offered for sale, but the record shows that the answer to the petition treated the assessment as one on physical property, and included allegations of proceedings before the board of supervisors. The description as set forth in the judgment refers to "unsold portions" of four distinct parcels, with assessed valuation placed upon "Land" and "Imps." Under the circumstances, neither the findings nor the judgment is inadequate or insufficient to determine the merits of the appeal.

The general rule is that the transfer of a cemetery lot does not convey title, but merely an interest to be used exclusively for the purpose indicated, namely, burial. (*Hollywood Cemetery Assn.* v. *Powell*, 210 Cal. 121 [291 Pac. 397, 71 A. L. R. 310].) The distinction between an assessment on physical property and upon interment rights is not important in determining a particular claim of exemption. It is the right of interment which gives the space value, since the dedicated land may not be used for other than cemetery purposes. It was this value which the assessor sought to reach, although he actually placed the assessment on the land, improvements and personal property. Regardless of the language used by him or by the trial court, the question is whether the constitutional provision is applicable to the properties of the Pomona Cemetery Association.

This appeal, unlike that of *San Gabriel Cemetery Association* v. *County of Los Angeles*, filed this date, *ante*, p. 624 [122 Pac. (2d) 330] is on the judgment roll alone. The court found that the Pomona Cemetery Association "is a nonprofit cemetery association," and "that it is a fact that none of petitioner's properties have ever been used or held for profit, and have never earned, made or paid any profits." The provision in the constitutional amendment "except as

used or held for profit" (*Cypress Lawn C. Assn.* v. *San Francisco,* 211 Cal. 387 [295 Pac. 813]) may be eliminated from consideration in this case. In this connection appellants refer to the argument sent to all voters, quoted in part in the Cypress Lawn case (p. 392) as follows: " 'It will not relieve from taxation property of cemetery associations and others which is to be sold for profit, but only property to be used exclusively for the burial of the dead, and this sacred property should be kept tax free . . .' " If in this appeal upon the judgment roll it were proper to refer to said argument, it is fully met by the finding of the trial court that the Pomona Cemetery Association is a non-profit organization which has "never earned, made or paid any profits."

In view of the findings, no good purpose could be served by discussing the various assessments, including those on personal property consisting of office furnishings, etc., or equipment for the upkeep of the grounds, convenience in making burials, etc., some of which were in fact used on all portions of the cemetery, regardless of present or future interment. The primary and major use of such equipment appears to have been in direct connection with property found by the court to be exempt.

█ It is immaterial whether the property assessed be real, personal or mixed in character. The provision uses the words "all property," and refers to that exclusively used or held for the permanent deposit of the human dead or for the care, maintenance or upkeep of such property or dead. █ The basis of appellants' argument in that regard is that the unsold portions of the land, crypts or niches, while "held" by the association, are not held for burial purposes but for sale, and that they may not be said to be held exclusively for burial until sold by the association. In other words, that "held for burial" applies only to rights of interment after transfer by the association to purchasers. The answer to this argument seems to be that the purchaser could obtain no other right than that conveyed by the vendor. The right, if any, of interment must first have been in the association. In this connection, appellants stress the word "exclusively," contending that it means that no plot or niche is used exclusively for burial until it has been transferred to a person who devotes it to this purpose. This argument presupposes that the word "exclusively" refers to persons using or holding rights of

interment. We cannot so construe article XIII, section 1b, the language of which is "all property used or held exclusively for the burial" etc. The controlling factor is not whether a particular person, group or association held an exclusive right to a specific plot or space used or intended to be used for burial, but whether the "property" was held exclusively for that purpose. Upon the dedication of the land by the association to the interment of the human dead, it was held by the association for that purpose just as effectively as would be a segregated portion thereof transferred to an individual and thereafter by him devoted to that purpose.

▮ It may be noted that the court used the words of the constitutional provision "used or held." The word "used" may well refer to the property employed as a burial place for the human dead, whereas "held" refers to property that has been prepared, made available, maintained and offered for sale for burial purposes. ▮ The Cypress Lawn case is not of assistance to appellants. The court there held (p. 389) that, subject to the exception "for profit," the "provision exempts from taxation and local assessment two kinds of property, classified on the basis of its use, but without *consideration of the status or character of its owner or possessor.*" (Italics added.) The hotel property held as an investment by the Cypress Lawn Cemetery Association was at least a degree or more removed from that which may be said to be held exclusively for cemetery purposes, but in the present case the trial court found—and the facts and circumstances substantiate the finding—that all of the property assessed "was used and held exclusively for the burial and other permanent deposit of the human dead, or for the care, maintenance or upkeep of such property or such dead."

The conclusion reached on the main question eliminates the necessity of considering the numerous points raised by respondent in justification of the trial court's entry of judgment directing the county counsel of Los Angeles to consent to the cancellation of the illegal and erroneous assessment and taxes.

The judgment is affirmed.

Peters, P. J., and Goodell, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 2, 1942.