[Civ. No. 11891. First Dist., Div. One. Feb. 10, 1942.]

SAN GABRIEL CEMETERY ASSOCIATION (a Nonprofit Cemetery Association), Respondent, v. COUNTY OF LOS ANGELES, Appellant.

J. H. O'Connor, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

Joseph Coleman Singer, Holbrook & Tarr and W. Sumner Holbrook, Jr., for Respondent.

WARD, J.—This is an appeal by the county of Los Angeles from a judgment in favor of San Gabriel Cemetery Association, defendant and plaintiff respectively, in a suit seeking the refund of taxes alleged to have been illegally and erroneously collected for the years 1933, 1934 and 1935 on cemetery property claimed to be exempt from such taxes. (Political Code, sec. 3804; see Revenue and Taxation Code, div. 1, pt. 9, ch. 5, art. 1.) The appeal has been taken under the alternative method.

The views expressed in our opinion in the case of *Pomona Cemetery Association* v. *Board of Supervisors,* filed this day,

*post,* p. 626 [122 Pac. (2d) 327], on the question of the exemption from taxation under the provisions of article XIII, section 1b of the state Constitution of real property used or held exclusively for burial purposes, and of personal property used primarily in connection with its care, maintenance and upkeep, are adopted as part of this decision. This disposition leaves for determination a question not before the court on the judgment roll in the Pomona case, namely, whether cemetery property otherwise exempt from taxation under such constitutional provisions would, by reason of being held, as appellants claim, for profit, come within the exception provided in such section.

The San Gabriel, like the Pomona, Cemetery Association was organized under the provisions of the Civil Code, sections 608-617 (repealed in 1931, but reenacted under similar provisions in div. VIII of the Health and Safety Code in 1939). On the present appeal it is earnestly contended that the evidence does not support the finding that the unsold lots and crypts are not held for profit.

The original cemetery site containing about four acres was acquired by gift in 1872. Since that time the association has purchased approximately twelve additional acres, all of which, except the site of the superintendent's office and residence, are entirely platted into burial lots and graves. (The cemetery contains in excess of 15,000 graves.) The trial court held that the office and residence property were not exempt from taxation. The association has not appealed from that part of the judgment and no opinion, therefore, is expressed on the question.

It is appellant's contention that any amount received by the association for cemetery lots or graves in excess of their cost represents profit. The price charged for burial space represents not only its actual cost, but includes expenses of many kinds incident to making the place salable for the purpose intended, including in many instances an obligation of perpetual care, proper supervision, beautification of grounds, clerical services, equipment of various kinds, etc. Annual statements of the association indicate an "operating surplus." No part of this amount is distributed to stockholders or members of the association as dividends or otherwise, but is used to buy more land as needed, for the employment of salesmen and goodwill representatives, for advertising pur-

poses and for the upkeep of the cemetery as above set forth. It may not be held herein that lots sold at a price in excess of their cost are sold "at a profit" as the word is used in article XIII, section 1b. (*Washelli Cemetery Assn.* v. *King County,* 158 Wash. 599 [292 Pac. 101]; *City of Paducah* v. *Commonwealth,* 136 Ky. 232 [124 S. W. 286]; *Mountain View Cemetery Co.* v. *Massey,* 109 W. Va. 473 [155 S. E. 547]; *Cypress Lawn C. Assn.* v. *San Francisco,* 211 Cal. 387 [295 Pac. 813]; *Pomona Cemetery Association* v. *Board of Supervisors, post,* p. 626 [122 Pac. (2d) 327].) The word "profit" does not mean financial benefit that accrues to the association through the sale of burial space at a price in excess of its cost where such gain is used for the upkeep of the cemetery property. The word "profit" in article XIII, section 1b, means net earnings the benefits of which accrue directly or indirectly to the stockholders or members of the association.

The court found that the parcels in question "have been used and held exclusively for the burial and other permanent deposit of the human dead, or for the care, maintenance or upkeep of such property or such dead, and no part thereof has ever been used or held for profit." The evidence sustains the finding.

The judgment is affirmed.

Peters, P. J., and Goodell, J. pro tem., concurred.