[L. A. No. 25548. In Bank. July 22, 1960.]

WESTMINSTER MEMORIAL PARK (a Nonprofit Corporation), Respondent, v. COUNTY OF ORANGE et al., Appellants.

Joel E. Ogle, County Counsel, Stephen K. Tamura and John H. Dawson, Assistant County Counsel, for Appellants.

Clock, Waestman & Clock, Henry H. Clock, Holbrook, Tarr & O'Neil, W. Sumner Holbrook, Jr., and Herman F. Selvin for Respondent.

Fitzgerald, Abbott & Beardsley, Musick, Peeler & Garrett and Melvin D. Wilson as Amici Curiae on behalf of Respondent.

PETERS, J.—This appeal involves the question as to whether property purchased by the plaintiff, Westminster Memorial Park, a nonprofit cemetery association, under a percentage sales price contract, and used or held by it exclusively for the burial or other deposit of the human dead, is exempt from taxation under article XIII, section 1b, of the state Constitution. That section, adopted in 1926, provides: "All property used or held exclusively for the burial or other permanent

deposit of the human dead or for the care, maintenance or up-keep of such property or such dead, except as used or held for profit, shall be free from taxation and local assessment.'' The county and the other defendants[1] urged at the trial, and the county urges here, that the property involved was ''held or used for profit'' and is therefore subject to taxation. The trial court held that the property is exempt and granted its judg-ment in favor of plaintiff for the taxes levied and collected by the county of Orange. In our opinion that judgment should be affirmed.

The property involved consists generally of unsold grave sites, unsold mausoleum crypts, and other property used in connection with the cemetery operation. It is admitted that plaintiff is a nonprofit cemetery association. It has no stock or stockholders. It is conceded that all of its income is spent in the maintenance, operation and upkeep of the cemetery. Upon dissolution, its assets will be distributed to the trustees of an endowment care fund. Defendant concedes that the property in question is ''used or held exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property'' within the meaning of the constitutional provision, and further concedes that none of the property is ''used or held'' for the profit of the cemetery association. It is the theory of the defendant county, however, that the property is ''held'' by the plaintiff for the ''use'' and ''profit'' of the former owners, the sellers of the property, because of the form of the contract under which plaintiff is purchasing the property from the former owners.

The case was submitted to the trial court upon stipulated facts. It there appears that the present cemetery land was at one time owned by the McWhinney family. They sold it to a profit cemetery corporation, plaintiff's predecessor in interest, under a percentage sales price contract whereby the McWhin-neys agreed to convey the land to the profit corporation, and that corporation agreed to develop the land as a cemetery. The corporation agreed to charge a minimum price for burial plots, and to pay the McWhinneys as the purchase price of the land

---

[1]The plaintiff named in its complaint the Midway City Sanitary Dis-trict and Don S. Mozley, the tax collector of the county of Orange, as defendants along with the county of Orange. All three defendants an-swered. The trial court, however, granted its judgment against the county alone. Nevertheless, all three defendants purported to appeal from the judgment. The Midway City Sanitary District and the tax collector have appealed from a judgment that, as to them, is nonexistent. Their purported appeals should, therefore, be dismissed.

25 per cent of the sales price of all grave or interment space sold, after allocations to the endowment care fund, with a minimum payment of $4,000 a year, together with a percentage of the sales price of mausoleum space sold calculated in accordance with a detailed formula. In 1954 the plaintiff, admittedly a nonprofit corporation, obtained the property from the profit corporation, and as part of the consideration for the transfer assumed the liabilities and obligations of the profit corporation under the percentage sales price contract. It was stipulated that this agreement was fair and reasonable.

The property sold by the McWhinneys to the profit corporation in 1952 was unimproved land. Since that time, first the profit corporation and later the plaintiff, as contemplated by the sales agreement, have developed the land into a cemetery, and the entire area has become burial sites, mausoleum crypts, or is used for purposes incidental to the cemetery.

The McWhinneys were the sole stockholders of the profit corporation. All of their stock was sold to the nonprofit corporation as an incident of the transaction whereby the plaintiff acquired the assets of the profit corporation. The contract between the parties required the McWhinneys to execute a grant deed to the nonprofit corporation, forthwith. It is conceded that this was done, and that the property is, and since 1954 has been, recorded in the name of, and assessed to, the plaintiff. It was stipulated that this ownership by the plaintiff is subject to the terms and conditions of the percentage sales price contract.

No contention is made that the plaintiff nonprofit corporation was organized or is being operated for the ultimate benefit of the McWhinneys. It was stipulated that payments for their services to the officers, directors or trustees of plaintiff corporation were reasonable. It was also stipulated that no issue was raised as to the reasonableness or fairness of either the sale of stock to plaintiff, or the transfer of the property to plaintiff, subject to the terms of the percentage price agreement. The county expressly disclaims reliance on any theory that the relationship between the McWhinney family and the plaintiff corporation, created a joint venture or partnership. There is neither pleading nor proof, and it is not contended, that the plaintiff is the *alter ego* of the sellers, or that it holds the property in trust for the sellers.

The problem presented to this court is this: The plaintiff nonprofit corporation has legal title to the land, and

the land is assessed to it. The property is "used or held" by plaintiff "exclusively for the burial or other permanent deposit of the human dead or for the care, maintenance or upkeep of such property or such dead" within the meaning of article XIII, section 1b, of the state Constitution. The property, admittedly, is not "used or held" for the profit of plaintiff within the meaning of the provision. The property is being purchased under a percentage sales price contract. The plaintiff, however, is, admittedly, not engaged in a joint venture or partnership with the sellers, nor is it the *alter ego* of, or trustee for, the sellers. Is such property being "used or held" by the plaintiff for the benefit of the sellers within the meaning of the constitutional provision? Obviously not.

It is the theory of appellant that respondent nonprofit corporation was organized and is obliged to develop the purchased lands for cemetery purposes and to sell graves and crypts for the profit and benefit of itself and the former owners. Undoubtedly as the cemetery is developed both the respondent and the sellers make a profit caused by the enhanced value of the land. It is urged that the beneficial ownership of the land is at least partially in the sellers and that therefore property is "used or held" by the nonprofit corporation for the sellers. Hence, so it is argued, the property is subject to taxation. Running through appellant's argument is the thought that in some way the sellers of the land have retained some interest in or control over the land. But this innuendo is contrary to the record. Appellant concedes that the buyer and sellers are not joint venturers, and that they are not partners. There is no evidence, proof or contention that the buyer is the *alter ego* of the sellers. There is no evidence, proof, or contention that the buyer is the trustee for the sellers.

The trial judge, the Honorable John Shea, stated the issue very clearly. He concluded that there is "no way by which the tax imposed upon the plaintiff can be upheld." After stating that, under the stipulated facts, the plaintiff is a nonprofit corporation, that all the property is used or held exclusively for cemetery purposes, and that under the percentage sales price contract the sellers realize a profit from the sale of the cemetery land, the court pointed out that "the tax in this case is not assessed against the McWhinneys but rather is assessed against the plaintiff, which is stipulated to be a bona-fide nonprofit corporation."

The court then continued: "It occurs to me that if the

corporation were the alter ego of the members of the McWhinney family, the court could disregard the corporate entity and uphold the tax against the corporation. However, alter ego has not been pled [*sic*] in this case, and the stipulated facts show no connection between the McWhinney family and the corporation. . . . Under this state of pleading and proof, alter ego cannot be applicable.

"Accordingly, it is my judgment that the land in question is not 'used or held for profit' of the *plaintiff*, and that the plaintiff is entitled to judgment."

The problem is really quite simple. The land is owned by, and assessed to, the plaintiff, admittedly a nonprofit cemetery association within the meaning of article XIII, section 1b, of the Constitution. Admittedly, all of its income from the sale of burial sites and crypts is spent in the maintenance and operation of the cemetery. It is a stipulated fact that all of the assessed property is "used or held exclusively for the burial or other permanent deposit of the human dead" within the meaning of the Constitution, and that none of the assessed property is "used or held" for the profit of the cemetery association.

The sole connection of the McWhinneys to this property is that they are the sellers of the property and hold a contract whereby the purchaser agrees to pay them the purchase price based on a percentage of the sales. The sellers retain no present interest of any kind in the property sought to be taxed. Both the legal and beneficial titles are in the buyer. The relationship between the sellers and buyer is simply that of creditor and debtor, that is, from a legal standpoint, the sellers are merely the creditors of the buyer. In the absence of an *alter ego* theory, or of a joint venture, partnership or trust, the property is owned by, and assessable to, the buyer. The sellers have no assessable interest in the land, and, in the absence of one of these relationships, it cannot be held that the buyer is holding the land for the use of the sellers.

The appellant seems to think that there is some magic in the form of the purchase contract, that is, that because the sellers receive a percentage of the sales price of the burial crypts, an ordinary creditor-debtor relationship is converted into something else that makes an otherwise nontaxable property taxable on the theory that it is being "used or held" for the benefit of the sellers. It is true, of course, that the sellers receive a benefit from the sale of the cemetery lands, but this

benefit is no different in nature from the benefit received by all the creditors of the cemetery association. Obviously, in a very limited sense, the cemetery property is being "used or held" for the benefit of all of the creditors of the cemetery association, but it would be absurd to contend that because the cemetery association has general creditors it is deprived of the exemption. Such a construction would defeat the very purpose of the exemption. In apparent recognition of the absurdity of such an argument appellant concedes that the existence of a mere general creditor-debtor relationship does not defeat the exemption. The concession is in accord with the law (*Sherman* v. *Quinn,* 31 Cal.2d 661 [192 P.2d 17]).

The percentage price contract here involved does not change the legal relationship of the parties. The sellers are general creditors of the buyers. The manner and mode of payment, whether by a fixed purchase price or a sliding purchase price, is of no legal significance so far as the tax assessor is concerned. As long as there is no legal domination by the sellers, the relationship remains that of debtor and creditor. Neither a creditor who has a fixed amount owing to him, nor a creditor who is entitled to a percentage of the sales price, has any beneficial interest in the lands involved.

The respondent, on oral argument, pointed out that, in the cemetery business, it is the general custom to hire salesmen of burial crypts on a percentage basis. If the percentage contract here involved deprived the nonprofit cemetery association of its exemption, so would the percentage salesmen contracts. To argue that, in such a case, the property is being "used or held" for the profit of the salesmen is patently absurd.

Appellant places considerable reliance on the rule that tax exemptions are to be construed most strongly against the exemption. That rule offers no solace to the appellant. Even if the exemption be construed most strictly against respondent, it still would be entitled to the exemption. The rule does not require that the language of the Constitution should be distorted or even limited to its narrowest meaning. In *Cedars of Lebanon Hospital* v. *County of Los Angeles,* 35 Cal.2d 729 [221 P.2d 31, 15 A.L.R.2d 1045], this court, in interpreting the so-called welfare exemption, stated (p. 734):

"Constitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will be neither enlarged nor extended beyond the plain meaning of the language employed. (*Cypress Lawn*

*Cemetery Association* v. *San Francisco*, 211 Cal. 387, 390 [295 P. 813] ; *San Francisco* v. *San Mateo*, 17 Cal.2d 814, 817 [112 P.2d 595].)

"But the rule of strict construction does not require that the narrowest possible meaning be given to words descriptive of the exemption, for a fair and reasonable interpretation must be made of all laws, with due regard for the ordinary acceptation of the language employed and the object sought to be accomplished thereby. [Citing cases and other authorities.] "

The words "used or held for profit" as used in the constitutional provision under consideration must necessarily mean that the property is exempt unless "used or held for profit" *of the taxpayer*. Here it is a stipulated fact that the property is not "used or held for profit" of the taxpayer. In the absence of any relationship such as joint venturer, partner, *alter ego* or trustee between the parties, the property is not being "used or held for profit" of the sellers, but is being held by respondent solely and exclusively for cemetery purposes.

It must be remembered that the type of contract here in use was not a device dreamed up by the respondent and the sellers as a means of avoiding taxes. This type of contract is well-known to the law, and has been used in the cemetery field for many years. It has been in use in California at least since 1880. In that year section 611 of the Civil Code[2] was amended expressly to authorize cemetery associations to enter into percentage sales price contracts similar to the one here involved. Indeed it is contended in the briefs of respondent, and not denied by appellant, that most of the cemeteries and mausoleums in California have been so financed. Be that as it may, it is quite apparent that in 1926 when article XIII,

[2]Section 611 of the Civil Code as amended in 1880, and as it read until its repeal in 1931, read, in part: "Such corporations may also agree with the person or persons from whom cemetery lands shall be purchased to pay for such lands, as the purchase price thereof, any specified share or portion, not exceeding one-half, of the proceeds of all sales of lots or plats made from such lands; such payment to be made at such intervals as may be agreed upon. . . ." This statute was copied almost verbatim from the New York Rural Cemetery Act of 1847 (N.Y. Laws 1847, ch. 133) as amended in 1853 (N.Y. Laws 1853, ch. 122). The New York statute also provided for tax exemption of such lands. California did not provide such exemption until 1926. Section 611 was repealed in 1931 by the adoption of the General Cemetery Act of 1931 (Stats. 1931, ch. 1148, pp. 2434, 2451). The present cemetery law is to be found in the Health and Safety Code, § 8100 through § 9677.

section 1b, of the Constitution was adopted, the percentage sales price contract had been in use in this state for at least 46 years. If there had been any intent to tax property purchased under such contracts the drafters of the amendment would have said so. They did not. Quite to the contrary, they used language that indicates that property used for burial purposes is to be exempt unless "used or held for profit" of the cemetery association.

A proper interpretation of the meaning of the phrase "used or held for profit" within the meaning of the constitutional provision is to be found in the case of *Cypress Lawn Cemetery Association* v. *San Francisco*, 211 Cal. 387 [295 P. 813]. There the cemetery association claimed an exemption for a hotel building owned by it upon the ground that the profits from the hotel flowed back into the perpetual care fund. It was held that the hotel was "used or held" for the profit of the cemetery association and was taxable to it. The court reiterated the doctrine that constitutional provisions "exempting property from taxation are strictly construed" (p. 390) and held that the hotel was not used exclusively for cemetery purposes even though its income was devoted to such purposes. This decision is sound.

There are two other decisions that throw some light on the proper interpretation of the constitutional provision. They are *San Gabriel etc. Assn.* v. *County of Los Angeles*, 49 Cal. App.2d 624 [122 P.2d 330], and *Pomona etc. Assn.* v. *Board of Supervisors*, 49 Cal.App.2d 626 [122 P.2d 327]. In the San Gabriel case it was contended that when a nonprofit cemetery association sells burial rights in excess of their cost a "profit" is realized and therefore such lots are "used or held" for profit. The appellate court stated: "It may not be held herein that lots sold at a price in excess of their cost are sold 'at a profit' as the word is used in article XIII, section 1b" (p. 626) citing several cases, and in particular *Washelli Cemetery Assn.* v. *King County*, 158 Wash. 599 [292 P. 101]. Of particular interest in the present case is the following language used by the court, also on page 626: "The word 'profit' does not mean financial benefit that accrues to the association through the sale of burial space at a price in excess of its cost where such gain is used for the upkeep of the cemetery property. The word 'profit' in article XIII, section 1b, means net earnings the benefits of which accrue directly or indirectly to the stockholders or members of the associa-

tion.'' Tested by that standard there is no ''profit'' in the instant case within the meaning of article XIII, section 1b. That this is so, is clearly shown by the Washelli case cited, and relied upon, in the San Gabriel case, where the Supreme Court of Washington held that there is no profit to the cemetery association within the meaning of its statutes when the property is being purchased on a percentage price sales contract.

In the Pomona case, *supra,* the taxing authorities contended that the unsold portions of cemetery lands were not being held for burial purposes but for sale. It was contended that the unsold plots were not being held by the cemetery association exclusively for burial purposes, and were, therefore, taxable. This contention was found to be without merit, the court holding that upon dedication of the land to the interment of the human dead the property became exempt.

The rationale of these cases supports the conclusion in the instant case that the property is not subject to taxation so far as the cemetery association is concerned. The rights or liabilities of the sellers of the property are not here involved. But, so far as the cemetery association is concerned, it is simply the debtor of the sellers, is the owner of the land and devotes it and the profits therefrom to cemetery purposes, and is therefore tax exempt.

The purported appeals by the Midway City Sanitary District and by Don S. Mozley, Tax Collector of the County of Orange, having been taken from a nonexistent judgment, are dismissed. The judgment against the County of Orange is affirmed.

Schauer, J., McComb, J., White, J., and Dooling, J., concurred.

TRAYNOR, J.—I dissent. I would reverse the judgment for the reasons stated by Mr. Justice Coughlin in the opinion prepared by him for the District Court of Appeal in this case. (*Westminster Memorial Park* v. *County of Orange* (Cal.App.) 2 Cal.Rptr. 527.)

Gibson, C. J., concurred.