CLUB YAUCANO, Plaintiff and Appellant, v. SOL LUIS DESCARTES, SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 11788. Decided September 29, 1961.

*Gutiérrez, Sánchez & Morales* for appellant. *José Trías Monge, Secretary of Justice,* and *Cándido Ceballos, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, and Mr. Justice Blanco Lugo and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The Club Yaucano, an entity registered in the State Department since May 20, 1946 as a nonprofit association, resorted to the Superior Court to challenge the assessment of

the property tax on a parcel of land of 1.74 cuerdas and structures thereon, which the Secretary of the Treasury notified for the fiscal years 1952–1953, 1953–54, and 1954–1955. It alleged that such assessment was contrary to law on the ground that it was entitled to the exemption allowed by § 291(e) of the Political Code (13 L.P.R.A. § 551).

The issue thus joined, at the commencement of the hearing of the case the trial court was informed that the only question for decision was the Secretary's contention, raised in the answer to the fourth paragraph of the complaint, that the plaintiff entity was not entitled to the exemption claimed because its properties are partly devoted to pecuniary profits, "ceding its properties and recreation facilities to private persons, through its members, for certain activities, upon payment of certain sums of money." [1]

Section 291 of the Political Code of Puerto Rico (13 L.P.R.A. § 551), which enumerates the properties exempt from the assessment of the property tax, provides in its subd. (e) [2] that:

---

[1] The attorney for the plaintiff association informed the court that the controversy narrowed down to a determination of whether the halls of the institution "are available to private persons by the payment of a sum," and the counsel for the Secretary of the Treasury was agreed. Thereupon the following dialogue took place (tr. ev. 5):

"JUDGE: In that case, if it were not for that, would there be a right to exemption? Are the other requirements met?

DEFENDANT: ATTORNEY CEBALLOS:

*The other requirements are met.*"

On the effect of this admission in connection with the *facts* involved in this case, see *Coll v. Sec. of the Treas.,* 82 P.R.R. 26, 35 (1960); *Cooperativa Cafeteros v. Gov't of the Capital,* 82 P.R.R. 49 (1961); *Freeman v. Noguera,* 82 P.R.R. 298 (1961).

[2] This provision was originally drafted as follows (§ 2943 of the Revised Statutes of 1911):

"(e) Every building used and set apart exclusively for religious worship, and the pews and furniture within the same; every building used and set apart for educational, literary, scientific or charitable purposes, and the furniture, appliances and apparatus appurtenant thereto; and every tract of land, not exceeding five cuerdas in extent, upon which such building or buildings is or are situated; *Provided,*

604

"(e) Every building, including the equipment and furniture therein, used and set apart exclusively for religious worship, as well as for parish houses used exclusively as dwellings of priests, ministers, or clergymen and where they constantly live; every building including the equipment and furniture therein, set apart for a Masonic or Odd-Fellows' lodge or for a center for theosophical or psychological studies, or used as a center for literary, or scientific education, or as charity center; every building, including the equipment and furniture therein, which is used and set apart exclusively for labor organizations or as a *place for recreation*, culture, and social intercourse, and which permanently maintains a reading room where periodicals, magazines, pamphlets and illustrated papers in general, national as well as foreign, are provided; and every tract of land, not exceeding five cuerdas in extent, upon which such building or buildings is or are constructed, provided such grounds and buildings be the absolute property of the organization or institution applying for the exemption, and are not leased or

That such grounds and buildings are not leased or otherwise used with a view to the pecuniary profit of either the lessor or lessee."

Up to the present time it has undergone the following changes: (a) by Act No. 76 of March 14, 1912 (Sp. Sess. Laws, p. 120), the extension covered masonic lodges; (b) by Act No. 42 of July 7, 1925 (Sess. Laws, p. 256), the exemption covered nonprofit associations, in the following words: " . . . every building, including the equipment and furniture therein, which is the absolute property of a non-pecuniary association and which is used or destined exclusively and wholly for labor organizations or as a place for recreation, culture and social intercourse and which permanently maintains a reading room where periodicals, magazines, pamphlets and illustrated papers in general, national as well as foreign, are provided"; (c) Act No. 4 of April 11, 1928 (Sess. Laws, p. 120) extended the exemption to buildings set apart for Masonic or Odd-Fellows' lodge or for a center for theosophical or psychological studies; (d) the parish houses used exclusively as dwellings of priests, ministers or clergymen in general who officiate in the corresponding parishes and churches, provided such parish houses belong to the respective order or institution and are situated in the same municipality to which the church belongs, were elegible for exemption under Act No. 12 of August 23, 1933 (Sp. Sess. Laws, p. 72); and (e) lastly, it was provided by Act No. 266 of May 10, 1950 (Sess. Laws, p. 692) that in the cases of institutions devoted to teaching the limitation of five cuerdas shall not apply, provided it did not exceed 100 cuerdas, and the land were used in regard to teaching, and the requirement that the parish houses be the property of the respective order or institution was eliminated. See *Board of National Missions* v. *Robles*, 58 P.R.R. 223 (1941).

used with a view to pecuniary profit either for the lessor or for the lessee, and provided the said institution is not for pecuniary profits; *Provided,* That in the cases of institutions devoted to teaching, the limitation of five (5) cuerdas, hereinbefore set forth, shall not apply, and the tax exemption on the land shall be extended up to a maximum of one hundred (100) cuerdas, provided that the said lands are used in regard to teaching." (Italics ours.)

██ In accordance with the above-copied provision, four requirements are necessary in order that the exemption therein allowed may be claimed successfully, to wit: (*a*) that the building in question be the sole property of a non-profit association; (*b*) that said building be used and devoted exclusively and wholly, among other things, as a center for recreation, culture, and social intercourse; (*c*) that it maintain permanently a reading room where periodicals, magazines, pamphlets and illustrated papers in general, national as well as foreign, are provided; and (*d*) that the building and lands on which it is erected are not leased and used with a view to pecuniary profit for the lessor or for the lessee.

In *Puerto Rico High School of Commerce* v. *Tax Court,* 77 P.R.R. 830 (1955), we held that the exemption provided in § 291(*e*) of the Political Code (13 L.P.R.A. § 551) does not include the property of a corporation engaged in private educational activities as a lucrative business, since these exemptions are generally granted in consideration for services or activities essentially public in nature, which are not motivated by profit and which in some way are beneficial to the community in general. The corporation in that case was organized under the Private Corporations Act, for lucrative purposes, and the evidence established that its three incorporators not only received salaries for the services which they rendered to it, but also dividends from the profits realized from its educational activities.

In *Chamber of Commerce* v. *Tax Court*, 67 P.R.R. 400 (1947), we said that in order that an entity may enjoy the benefits of the tax exemption provided by § 291 (*e*) of the Political Code, it was necessary that the building belonging to it be devoted *exclusively* and *wholly* for the purposes therein determined. It appearing from the evidence that the lower story of its building was rented to three private entities, for which it received a certain monthly amount by way of rental, it was evident that it did not qualify for the exemption not only because it did not use the building solely and exclusively for its own purposes, but for obtaining a pecuniary profit. The fact that any profit received was used to amortize a mortgage lien on the structure in no way altered the conclusion reached.

In *Buscaglia, Treas.* v. *Tax Court*, 66 P.R.R. 623 (1946), appeal dismissed in 164 F.2d 745 (1947), certiorari denied in 333 U.S. 867 (1948), we held that in order to enjoy the tax exemption in question it is not enough that the properties be owned by a nonprofit entity (*Sociedad Española de Beneficencia y Auxilio Mutuo*), but that it is necessary that they be actually used for charitable purposes. We also said that this determination is a matter to be finally decided in each case on its own facts.

 It is a rule of statutory construction frequently invoked that tax exemptions must be restrictively construed, *Puerto Rico High School of Commerce* v. *Tax Court*, 77 P.R.R. 830 (1955); *Fajardo Sugar Co.* v. *Sec. of the Treasury*, 76 P.R.R. 802 (1954); *Francis* v. *Tax Court*, 74 P.R.R. 18 (1952); *In re Hillcrest Memorial Gardens, Inc.*, 119 S.E.2d 753 (W. Va. 1961); *Community Drama Ass'n of Des Moines* v. *Iowa State Tax Commission*, 109 N.W.2d 23 (Iowa 1961); *Oregon Methodist Homes, Inc.* v. *Horn*, 360 P.2d 293 (Ore. 1961); and that the burden of proof rests on the party claiming the benefit of exemption, *Bouchard* v. *Johnson*, 170 A.2d 372 (Me. 1961); *General Tel. Co. of*

*Southeast* v. *Boyd,* 343 S.W.2d 872 (Tenn. 1960); *In re Taxes of Johnson,* 356 P.2d 1028 (Hawaii 1960). However, this does not mean that the law be strictly construed as necessarily excluding the benefits of exemption, but rather that it is not to be extended beyond ascertainable legislative intent, *Deubel* v. *Kervick,* 166 A.2d 561 (N.J. 1960), that is, that the interpretation should not be so narrow and literal as to defeat its settled purpose, *Buscaglia, Treas.* v. *Tax Court,* 67 P.R.R. 53 (1947); *People ex rel. Watchtower Bible and Tract Society, Inc.* v. *Haring,* 170 N.E.2d 677 (N.Y. 1960); *Westminster Memorial Park* v. *County of Orange,* 354 P.2d 247 (Cal. 1960); *Armco Steel Corporation* v. *State Tax Commission,* 155 A.2d 678 (Md. 1959). It is only necessary that such construction be reasonable, *Holy Trinity Protestant Episcopal Church of Kenwood* v. *Bowers,* 173 N.E.2d 682 (Ohio 1961).

██ It is well to note that the exemption provided by the transcribed subd. (*e*) is granted to the property and not to the organization owner thereof. As correctly stated by the respondent court, the nature of the exemption is in rem and not in personam. *All* the requirements prescribed by the statute refer to the property, to wit: (*a*) the dominion title must belong to a nonprofit association; (*b*) it must be used *exclusively* as a center for recreation, culture, and social intercourse among the members; (*c*) there must be maintained permanently a reading room under certain conditions; and (*d*) it can not be leased or used with a view to pecuniary profit for the lessor or for the lessee. To that effect, there should be considered the primary purpose, not its incidental use, *Spring Hill Cemetery of Danville* v. *Ryan,* 170 N.E.2d 619 (Ill. 1960); *Iota Benefit Association* v. *County of Douglas,* 85 N.W.2d 726 (Neb. 1957); *Columbus Youth League* v. *County Board of Revision,* 174 N.E.2d 110 (Ohio 1961). Another controlling element is the method of doing business, not the method of distributing the corporation's

capital stock, *Pacific Supply Cooperative* v. *Ellis*, 356 P.2d 939 (Ore. 1960). It has also been held that it is the use of the property and not the use of the proceeds derived from its operation which is determinative, *Columbus Youth League* v. *County Board of Revision*, 174 N.E.2d 110 (Ohio 1961); *Burns* v. *Glander*, 64 N.E.2d 678 (Ohio 1946).

■ The respondent court concluded that appellant could not claim exemption for its building because, although it was organized as a nonprofit association, "the manner in which it was set up and its operation established permits and gives occasion to use for personal benefit (of some of its members) the property for which exemption is claimed." In order to arrive at this conclusion, it made a perusal of the by-laws and incorporation clauses of the Club Yaucano, particularly those bearing on a possible liquidation of the association. The trial judge attached great importance to the regulatory provisions of articles 15(e)[3] and 56(b).[4] In our opinion, a great part of the significance attached to these provisions vanishes if we consider that in order to be a charter member it is only necessary to pay an amount certain, which is not proportionate to the actual value of the properties of the association at the time of joining as a member, and that there is no limitation as to the time for making application. Moreover, the uncontroverted fact is that no charter member or otherwise has derived a personal benefit

---

[3] The said art. 15(e) reads as follows:

"The charter members are the only owners of all real and personal property and of all credits and securities of any kind which the Club may own at present or may acquire during its lifetime."

[4] The said art. 56(b) reads as follows:

"In the event of dissolution of Club Yaucano, as provided in article 2 of the By-laws, all the personal and real property and other securities owned by the Club shall be liquidated. After the obligations are paid, the balance shall be distributed only among the charter members in proportion to the number and value of the certificates held by each; *Provided,* that before delivering the share of any member there shall be deducted any sum which he may be owing on account of dues and debts in default, as required by subdivision (*f*) of article 24 of these By-laws."

from the Club's activities. However, we do not believe that for the purpose of passing upon the right to exemption it is necessary to project the facts into the future and derive the possible consequences of a liquidation, but that it is necessary to consider whether the situation at the time the tax was assessed supports the fact that the building was used for the exclusive purposes of the association, and whether the use inures to the economic benefit of the association or of any of its members in particular. *Cf. Mary Immaculate School* v. *Assessors*, 175 N.Y. Supp. 701 (1919). The evidence, in our opinion, requires that both propositions be answered in the negative. The testimonies of Julio C. Torres and Francisco Lluch established that the building has not been leased nor used by private persons, and "except for the use of its members"; that the halls and recreation facilities are not ceded to persons other than members; and that membership is indispensable for the use of the building; that when the activities are ceded to a member, he may bring guests, but he is responsible not only for the expenses incurred in the celebration of the particular activity, but of the behavior of the invitees;[5] that when the particular

---

[5] The by-laws of Club Yaucano provide:

"Article 21.—All the members and their relatives shall be entitled to visit the Club and use its facilities. However, in order to attend the activities of the Club it shall be necessary to obtain a special invitation, personal and nontransferable in character, which shall be presented at the entrance. Relatives of the members shall mean: the wife, the single daughters, male children under 18 years of age, and other relatives of the female sex who live under the same roof.

"Article 22.—Upon application in writing, the members may procure from the President or the Board of Directors additional invitations for relatives and friends nonresidents of the metropolitan area who wish to attend the social activities of the Club. However, the granting or not of such invitations shall rest in the discretion of the President or of the Board of Directors, which are the authorities empowered to collect a minimum charge in these special cases; *Provided,* That no member may request additional invitations for more than three persons nor more than

activities of a member are permitted, the other members can not be excluded from the use of the Club; that the operation of the bar and kitchen produces a deficit even when prices are charged for the purpose of defraying all the expenses, and that such deficit is wiped off with the members' dues.[6]

On the other hand, since the exemption is in rem, the manner in which the plaintiff entity was set up is not controlling because the exemption is not granted in consideration to the association, but the important thing is to determine the predominant use to which the association has devoted its property, that is, that the determining element is whether it has been used exclusively as a center for recreation, culture, and social intercourse of its members. This was the opinion of the Secretary of the Treasury in stating that the controversy was actually confined to determining whether the halls and activities of the building of Club Yaucano were ceded to private persons, for pay; and, as has been seen, the only evidence offered does not support the contention of the Secretary of the Treasury.

■ It is well to clarify that the fact that an association is organized without lucrative purposes does not mean that it does not necessarily receive income, provided such income is not derived from activities carried out as a business enterprise, but merely for the convenience of its members or guests.

---

twice in one year for the same person; *Provided, further,* that the member obtaining additional invitations shall be responsible for the conduct of his invitees.

"Article 23.—Any member may, on his responsibility, invite to the Club visiting friends who may be so deserving. However, such visitors may not attend the celebration of social activities unless they have procured the special invitations required by Article 22."

[6] In this connection, it is not correct to assert that this operation produces profits. The financial statements offered in evidence reveal only the gross profits from such operations by deducting the cost of the

The instant case is distinguishable from the three prior cases in which we have had occasion to construe subd. (*e*) of § 291 *supra*. As in the case of Puerto Rico High School of Commerce, the question does not concern an entity engaged in lucrative activities; nor has it leased in whole or in part the building on which exemption is claimed, as in the case of Chamber of Commerce; and its properties are actually used for culture and social intercourse of its members, as distinguished from the facts in the *Auxilio Mutuo* case.

The Legislative Assembly has evidenced an unequivocal intention to grant the tax-exemption benefit to associations of this type: inheritance and gift tax, § 4 of Act No. 303 of April 12, 1946 (Sess. Laws, p. 782; 13 L.P.R.A. § 886 (c) (2) and (3)) ;[7] income tax, § 101 of Act No. 91 of

---

drinks, etc., from the total amount of income, but it does not take into consideration other overhead expenses, such as salaries of employees, a proportional part of the administrative expenses, and other fixed expenses.

[7] "Exemptions

"(a) . . . . . . . . .

"(b) . . . . . . . . .

"(c) . . . . . . . . .

"1. . . . . . . . . .

"(2) a corporation, association, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, educational, cultural, social, or public welfare purposes; including the encouragement of art and the prevention of cruelty to children or animals; *no part of the net earnings of which inures to the benefit of any private shareholder or individual*, and no substantial part of the activities of which is carrying on propaganda, for securing the enactment of particular legislation, or otherwise attempting to influence the enactment thereof; *Provided*, That the political parties organized under the Election Law of Puerto Rico, subtitle 1 of Title 16, shall not be included among the associations referred to in the provisions of this section;

"(3) a fraternal society, order, or association, operating under the lodge system, but only if such gifts are to be used exclusively for religious, charitable, scientific, literary, or educational purposes, including the encouragement of art and the prevention of cruelty to children or animals." (Italics ours.)

June 29, 1954 (Sess. Laws, p. 474; 13 L.P.R.A. § 3101(9)) ;[8] tax on public shows, § 1 of Act No. 68 of June 11, 1953 (Sess. Laws, p. 226), as amended by Act No. 14 of April 13, 1954 (Sess. Laws, p. 134; 13 L.P.R.A. (Supp.) § 2142).[9] As a general rule, the purpose of these exemptions is to facilitate the work performed by these institutions, because "it serves a public purpose." *Cf. Snyder* v. *Town of Newton*, 161 A.2d 770 (Conn. 1960). At present it is conceded that a citizen's recreation is, at least, partly a State function. (See Act No. 114 of June 23, 1961; 15 L.P.R.A. § 501, Supp. 1961). In this connection, the Club Yaucano performs part of that function by affording opportunities of enjoyment and recreation to its members.

 Considering all the foregoing circumstances and the particular facts of this case, we hold that the appellant association is entitled to the exemption provided in subd. (*e*) of § 291 of the Political Code. As a question of fact, this problem of exemptions must be resolved by an analysis of the specific facts of each case, and here the elements favorable to the exemption are controlling. The unfavorable elements which may concur do not have such a decisive weight as to defeat "the ascertainable legislative intent" of granting the exemption.

The judgment rendered by the Superior Court, San Juan Part, on August 16, 1955, will be reversed.

---

[8] *"Exemptions from tax on corporations*

"The following organizations shall be exempt from taxation under this subtitle—

". . . . . . . . .

"(9) Clubs organized and operated exclusively for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures any private shareholder or individual."

[9] *"Nonprofit societies exempt from tax on public shows*

"There are exempted from the provisions of sections 2131–2139 of this title, the University of Puerto Rico, all other college-level institutions accredited under the laws of Puerto Rico, and nonprofit societies, associations and groups with more than ten (10) years of existence, organized with the sole purpose of furthering (and encouraging) literature and the fine arts."