[S.F. No. 23442. Nov. 23, 1976.]

ALLEN P. FIELDS et al., Petitioners, v.
MARCH FONG EU, as Secretary of State, etc., et al., Respondents;
EDMUND G. BROWN, JR., as Governor, etc., Real Party in Interest.

**COUNSEL**

Dahl, Hefner, Stark & Marois and Richard K. Park for Petitioners.

Evelle J. Younger, Attorney General, Iver E. Skjeie, Assistant Attorney General, and Floyd D. Shimomura, Deputy Attorney General, for Respondents and for Real Party in Interest.

**OPINION**

**MOSK, J.**—The California Constitution directs that judges of the superior court shall be elected "at general elections." (Art. VI, § 16, subd. (b).) General elections are held only in even-numbered years. (Elec. Code, § 23.) In any year, however, the Legislature is constitutionally authorized to increase by statute the number of superior court judges in a county. (Art. VI, § 4.) The question therefore arises, at which general election shall a newly created office of superior court judge be first filled? The answer, as will appear, is to be found by construing together the several constitutional provisions bearing on judicial elections.

On October 31, 1975, the Governor signed into law an amendment to Government Code section 69593, increasing the number of superior court judges in Sacramento County from 18 to 20. (Stats. 1975, ch. 481.) On February 11, 1976, petitioners herein, two municipal court judges, filed with respondent Sacramento County Registrar of Voters their

declarations of intention to become candidates for election to the two newly created superior court offices at the June 8, 1976, statewide primary election.[1] On March 8, petitioners applied for nomination papers. The registrar refused to issue such papers on the ground that the offices in question will not be certified for the ballot until the 1978 general elections. In so ruling, the registrar relied on a written opinion to the same effect by respondent Secretary of State.

On March 12, petitioners filed an application in the Court of Appeal for an order commanding respondents to accept their filing fees and furnish them with nomination papers for these offices, and to place the offices on the June 1976 primary ballot with petitioners' names as candidates therefor. (Elec. Code, § 6403.) On March 23, the Court of Appeal denied the request without opinion, and on March 29 petitioners applied to this court for a hearing. Inasmuch as the Secretary of State was required by law to certify and transmit a list of all eligible candidates to each county clerk no later than April 1 (Elec. Code, § 6580), we declined to interrupt the election process but instead issued an alternative writ to be heard at a future date. Respondents and the Governor, who is the real party in interest, demurred to the petition on the ground they are under no legal duty to place these offices on the ballot until the 1978 general elections.

■ At the outset we observe that the issue of when elections should be held to fill new superior court judgeships is of general public interest and is likely to recur. Accordingly, this proceeding is not rendered moot by the fact that the 1976 primary election has now taken place. (*Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225].)

We set forth in the margin the relevant portions of section 16 of article VI of the Constitution.[2] Upon analysis it will be seen that section 16 creates an integrated and internally consistent plan for filling the judicial offices of the superior and appellate courts of this state. Subdivisions (a) and (d) deal with the appellate courts. They prescribe the time and place of the elections to those offices, the length of their terms, and the method of filling vacancies. Subdivisions (b) and (c) fulfill the same function for

---

[1] Such a primary election is deemed a general election for a nonpartisan office if the candidate receives a majority of the votes cast. (*Pollack* v. *Hamm* (1970) 3 Cal.3d 264, 268, fn. 3 [90 Cal.Rptr. 181, 475 P.2d 213].)

[2] "(a) Judges of the Supreme Court shall be elected at large and judges of courts of appeal shall be elected in their districts at general elections at the same time and places

the superior courts: subdivision (b) designates the time and place of the elections to all trial courts ("other courts"), while subdivision (c) declares—with respect to superior courts only—the length of term and the method of filling vacancies.[3]

More specifically, subdivision (c) provides that superior court vacancies are to be filled by a two-step process of appointment and election. First, the Governor "shall appoint a person to fill the vacancy temporarily until the elected judge's term begins." Then the latter—who may be the appointee or any other qualified candidate—must be chosen "at the next general election after the January 1 following the vacancy . . . ." Because general elections are held only in alternate years, the last-quoted provision inevitably operates as follows: if the vacancy occurs during a year in which there is no general election, the office will appear on the June primary ballot of the immediately following year; but if the vacancy arises at any time in an election year, the office will not be placed on the ballot until the next election year, i.e., two years later.[4]

Under our constitutional scheme, therefore, the timing of the election to fill a superior court vacancy depends strictly on the date the vacancy occurs. We recognize that most vacancies arise during an incumbent's term of office. There are many possible reasons for such an event: the death or retirement of the judge is doubtless the most common, but a statute lists 12 reasons in all (Gov. Code, § 1770) and others have been added by judicial decision (e.g., *Walter* v. *Adams* (1952) 110 Cal.App.2d

---

as the Governor. Their terms are 12 years beginning the Monday after January 1 following their election, except that a judge elected to an unexpired term serves the remainder of the term. . . .

"(b) Judges of other courts shall be elected in their counties or districts at general elections. . . .

"(c) Terms of judges of superior courts are 6 years beginning the Monday after January 1 following their election. A vacancy shall be filled by election to a full term at the next general election after the January 1 following the vacancy, but the Governor shall appoint a person to fill the vacancy temporarily until the elected judge's term begins."

Subdivision (d) provides in effect that incumbent judges of the Supreme Court and Courts of Appeal may choose to run for reelection; that if they do not, the Governor shall nominate the candidates to succeed them; and that in either event such candidates shall run unopposed. It also declares that "The Governor shall fill vacancies in those courts by appointment," and prescribes the duration of such appointments.

[3]The corresponding provisions for municipal courts and justice courts are found in chapter 6, title 8, of the Government Code.

[4]This means, of course, that the prescribed delay in filling a superior court vacancy by election can be as short as 6 months (e.g., from December 1975 to June 1976) or as long as 29 months (e.g., from January 1976 to June 1978).

484, 489-490 [243 P.2d 21]). Nevertheless, their frequency during an incumbent's term does not mean that vacancies cannot occur at other times.

The word "vacancy" in section 16 is not defined in that provision or elsewhere in the Constitution, and there is no indication that it is used in any technical sense. ■■■ It is settled that unless it appears that a word in the Constitution is employed in a technical sense, it must be given the ordinary meaning it had in common usage at the time the provision was adopted. (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538-539 [58 P.2d 1278]; *In re Quinn* (1973) 35 Cal.App.3d 473, 482-483 [110 Cal.Rptr. 881], and cases cited.) In that usage a vacancy is simply a state of being empty, unoccupied, or unfilled, without regard to when or how the condition arose. To cite an example often given in the cases, "A new house which has never been occupied is no less vacant than an old one which had been occupied, but whose tenant had removed from it. So a new office, which has never been filled, is vacant when there is no incumbent, as much so as if it had had an incumbent, and he had resigned or died." (*Yates* v. *McDonald* (1906) 123 Ky. 596 [96 S.W. 865, 866-867].)

Adopting this meaning in the case at bar, we conclude that subdivision (c) of section 16 applies to both "old" and "new" vacancies: i.e., a vacancy arises within the meaning of that provision either when an incumbent superior court judge dies or for any reason relinquishes his office, or when a statute creating a new superior court judgeship takes effect. In both events, subdivision (c) operates to prescribe the particular election at which such "vacancy shall be filled . . . ."

Petitioners ask us to read the Constitution in a much different manner. They contend that the word "vacancy" in subdivision (c) should be restricted to instances in which an incumbent judge dies or leaves an existing office. They do so, however, not because of some technical meaning of the word—none is proposed—but in order to evade the specific directive of subdivision (c) that superior court vacancies be filled at the next general election "after the January 1 following the vacancy . . . ." Having thus carved out a separate category of vacancies—i.e., those arising upon the creation of new superior court judgeships—petitioners then seek constitutional authority to run for the latter offices. They purport to find it in subdivision (b) of the same section ("Judges of other courts shall be elected in their counties or districts at general elections"). And because subdivision (b) speaks only of electing trial judges "at general elections" and does not prescribe which election is meant,

petitioners conclude that the Constitution has left the question unanswered and hence they are entitled to run at whichever general election first occurs after the creation of the office.

The argument is implausible, and its corollary is even more unlikely. Petitioners concede the Governor must have the power to temporarily fill new superior court judgeships by appointment, but they range far afield to find the constitutional source of that power. Because they insist such vacancies are not within the ambit of subdivision (c), they are unable to rely on the simple declaration therein that "the Governor shall appoint a person to fill the vacancy" (fn. 2, *ante*). They are thus compelled to look elsewhere—even to a different article of the Constitution: in article V, in the midst of an enumeration of the general powers of the executive, a provision recites that "Unless the law otherwise provides, the Governor may fill a vacancy in office by appointment until a successor qualifies." (Art. V, § 5, subd. (a).) This provision, petitioners claim, is the source of the Governor's authority to make appointments to newly created superior court judgeships. (See also Gov. Code, § 1772.)

■ It is a cardinal rule of construction that words or phrases are not to be viewed in isolation; instead, each is to be read in the context of the other provisions of the Constitution bearing on the same subject. (*Wallace* v. *Payne* (1925) 197 Cal. 539, 544 [241 P. 879].) The goal, of course, is to harmonize all related provisions if it is reasonably possible to do so without distorting their apparent meaning, and in so doing to give effect to the scheme as a whole. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723]; *Edler* v. *Hollopeter* (1931) 214 Cal. 427, 430 [6 P.2d 245].) Strained interpretation, or construction leading to unreasonable or impractical results, is to be avoided. (*Pollack* v. *Hamm* (1970) *supra,* 3 Cal.3d 264, 273; *Bakkenson* v. *Superior Court* (1925) 197 Cal. 504, 510-512 [241 P. 874].)

Applying these principles, we cannot accept petitioners' contorted reading of the Constitution. Their proposal takes words out of context, ascribes a major oversight to the constitutional draftsmen, and attempts to fill the ensuing self-created gap by distorting the plain purpose of subdivision (b) and by incorporating into the judicial article a generalized provision from a different portion of the Constitution. As we observed at the outset, however, section 16 of article VI sets forth an internally consistent plan for filling superior court judgeships. By giving

the word "vacancy" in subdivision (c) its ordinary meaning, we find all the necessary elements of that plan within the four corners of section 16; each clause of the section fulfills a separate and appropriate function, and neither lacunae nor redundancies appear. Such a construction best effectuates the intent of the electorate, and it is our duty to read the Constitution accordingly.

Both sides of the controversy cite decisions of this court in an effort to bolster their position. We have examined the cases, and find none directly in point. For example, petitioners rely on *People* v. *Waterman* (1890) 86 Cal. 27 [24 P. 807], stressing the statement in that opinion (at p. 30) that "No vacancy in a term can occur until a term has commenced . . . ." But the phrase is taken out of context. In *Waterman* the Legislature enacted a statute which created an additional superior court judgeship in San Bernardino County, and provided that the first person elected to that position would "hold office for the term prescribed by the constitution and the law." The sole question was the length of that term—i.e., whether it would expire simultaneously with the term of the other judge of the same court (two years thereafter) or whether it would continue for a full six years as generally provided by the Constitution. The court adopted the latter construction, declaring the answer to be "too clear to require argument, or the citation of authorities other than the constitution itself." (*Id.* at p. 29.)

The language of *Waterman* which petitioners emphasize appeared in the opinion for the purpose of negating the application of former section 6 of article VI of the Constitution. Section 6 decreed in part that "If a vacancy occur in the office" of a superior court judge, the person who is elected to fill the vacancy would hold office only "for the remainder of the unexpired term." In view of the latter phrase it is evident the provision was intended to apply solely to vacancies occurring during the "unexpired term" of an incumbent judge. Accordingly, no "vacancy" could occur within the meaning of former section 6 "until a term has commenced."

The quoted language was thus appropriate at the time of *Waterman*, but it has no relevance to the present wording of the Constitution. Section 16, the successor in this respect to section 6, declares in subdivision (c) that a superior court vacancy shall be filled by election

"to a full term . . . ."[5] Freed of its former limitation, the word "vacancy" can now be given the meaning it has in common usage and be applied to both existing and newly created judgeships. Nothing in *Waterman* is contrary to this construction.[6]

More relevant is *Wallace* v. *Payne* (1925) *supra,* 197 Cal. 539. The 1924 revision of the judicial article of the Constitution authorized the establishment of a system of municipal courts, declared that in each city in which a municipal court is created incumbent judges of inferior courts would become ipso facto judges of the municipal court, and required that the judges of all courts of record be members of the bar for five years prior to assuming office. The Legislature implemented the constitutional revision by enacting the Municipal Court Act of 1925. (Stats. 1925, ch. 358.) Section 17 of that act provided in part that "Any vacancy in the office of a judge of a municipal court shall be filled by appointment by the Governor . . . ." A municipal court of five judges was thereafter established in the City of Long Beach, but there was not a sufficient number of qualified inferior court judges to succeed to the new positions because one of such judges had not been a member of the bar for the required period.

The question presented to this court was whether a vacancy thereby occurred, so as to permit the Governor to fill the new position by appointment. It was contended, as here, that the word "vacancy" could not apply to a newly created judgeship which had not yet been occupied, but should be limited to instances in which an incumbent judge dies or relinquishes his office. In support, reliance was placed on the predecessors (former Pol. Code, §§ 996, 999) of statutes cited hereinabove (Gov. Code, §§ 1770, 1772) which prescribe grounds and procedures for filling offices which "become vacant."

[5]More precisely, the quoted language prescribing election "to a full term" was substituted for the former provision of section 6 when the subject matter thereof was transferred to section 8 in the 1926 revision of article VI. In the 1966 revision of the same article this language was transferred without substantial change to new section 16, subdivision (c).

[6]Equally distinguishable are *Pollack* v. *Hamm* (1970) *supra,* 3 Cal.3d 264, and *Anderson* v. *Phillips* (1975) 13 Cal.3d 733 [119 Cal.Rptr. 879, 532 P.2d 1247]. *Pollack* held that the death or resignation of an appointee to a vacant superior court judgeship does not create a new vacancy so as to require delaying the normal elective process to fill the seat. (3 Cal.3d at pp. 272-273.) In *Anderson* a majority of this court held that an appointee to a vacant superior court judgeship may continue to fill the vacancy until an elected judge assumes the office. (13 Cal.3d at p. 740.) Neither case involved a newly created judgeship, and neither addressed the issue before us.

In a unanimous opinion this court rejected the proposed restriction of the word "vacancy" and held the Governor authorized to fill the seat in question. Ruling that the cited statutes "were not intended to include" newly created but still unfilled offices, the court construed the word "vacancy"—as we do herein—in accord with common usage: "The term 'vacancy' has a broader meaning than merely that of a hiatus in incumbency. It means with relation to an office, a state of being unoccupied. In Bouvier's Law Dictionary the word 'vacancy' as applied to an office is defined 'A place which is empty. The term is principally applied to cases where an office is not filled.' The Century Dictionary defines the term 'vacancy' as 'an unoccupied or unfilled post, position, or office.' In the case of *People* ex rel. *etc.* v. *Hylan,* 212 N.Y. 236 [Ann. Cas. 1915D, 122, 106 N.E. 89], the Governor of New York undertook to fill by appointment the offices of certain county judgeships which had just been created by an amendment to the New York constitution upon the theory that vacancies in such offices existed as soon as the offices came into being and which as Governor he was authorized to fill. His action in so doing was upheld by the New York court of appeals in an exhaustive opinion wherein the decisions of the courts of many other jurisdictions are reviewed and in which, as a result of such review, said court declares that 'the general rule is that when a law establishing an office takes effect a vacancy in the office at once exists unless the language of the law imports futurity of selection'; and said court further quotes approvingly the definition of the term 'vacancy' as given by the supreme court of Tennessee in the case of *State* ex rel. *etc.* v. *Maloney,* 92 Tenn. 62, 72 [20 S.W. 419], as follows: 'There is a vacancy in every instance in which there is an office without an incumbent. Every office without an officer is vacant. Therefore every new office created must of necessity be vacant from the time of its creation until it is filled by appointment or election.' " (*Id.* at pp. 549-550; see also *Harrison* v. *Colgan* (1905) 148 Cal. 69, 73-74 [82 P. 674].)

Petitioners' efforts to distinguish *Wallace* miss the mark. They note that the word "vacancy" was there construed in the context of a statute dealing with municipal courts, rather than in the constitutional provision on superior courts; and they emphasize that the current statute on filling municipal court vacancies (Gov. Code, § 71180) specifically refers to newly created judgeships.[7] Petitioners overlook the fact, however, that

---

[7]Section 71180 provides in part that "If the office to which any person so appointed was not previously occupied, he shall hold office until his successor is elected at the general state election next succeeding the occurrence of the vacancy and qualifies."

the statute construed in *Wallace* (Stats. 1925, ch. 358, § 17) contained no such reference.

Moreover, even if *Wallace* had been decided under a statute similar to section 71180,[8] it would still be persuasive authority in the proceeding at bar. The emphasized difference in wording between section 71180 and the constitutional provision here in issue is easily explainable in the light of the different terms to be served by appointees to the municipal court and to the superior court.[9] ■ It is settled that the inference embodied in the maxim *inclusio unius est exclusio alterius* is not to be drawn when to do so would frustrate a contrary expression of legislative will, whether found in a statute (*Dickey* v. *Raisin Proration Zone No. 1* (1944) 24 Cal.2d 796, 811-812 [151 P.2d 505, 157 A.L.R. 324]) or in the Constitution (*Collins* v. *Riley* (1944) 24 Cal.2d 912, 915-918 [152 P.2d 169]).

Petitioners propose other grounds to distinguish *Wallace*, but none is convincing.[10] The relevance of *Wallace* is simply that it illustrates in a closely similar setting the rule that a vacancy will ordinarily be held to occur not only when an incumbent judge dies or retires but also when a statute creating a new judgeship takes effect. This is the rule followed in the overwhelming majority of jurisdictions which have considered the

[8]Such a case subsequently arose and the word "vacancy" was again construed to include newly created judgeships. (*Donnellan* v. *Hite* (1956) 139 Cal.App.2d 43, 46 [293 P.2d 158], disapproved on another ground in *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 343 [116 Cal.Rptr. 97, 525 P.2d 1273]; cf. *Phelps* v. *Brennan* (1976) 16 Cal.3d 508, 513 [128 Cal.Rptr. 423, 546 P.2d 1367] (construing Gov. Code, § 71180.3, relating to justice court vacancies).)

[9]In the first paragraph of section 71180 the Legislature prescribed generally that an appointee to a municipal court vacancy will hold office "for the remainder of the unexpired term of his predecessor." In the second paragraph, however, the Legislature made an exception for cases in which the vacancy was a newly created office: in that event the appointee will hold office only until a judge is elected at the next appropriate general election, at which time a full six-year term will begin. As we have seen, this exception is the rule for *all* superior court vacancies pursuant to article VI, section 16, subdivision (c), of the Constitution (fn. 2, *ante*). There was accordingly no need for the draftsmen of the constitutional provision to distinguish between the two kinds of vacancies and specifically mention those caused by newly created judgeships.

[10]For example, petitioners note that section 71180 speaks of vacancies in the "office" of municipal court judge, and they contend that under the constitutional provision a superior court vacancy is a vacancy in a "term" rather than in an office. A majority of this court held to the contrary in *Anderson* v. *Phillips* (1975) *supra*, 13 Cal.3d 733, 739. The matter is at most tangential to a proper resolution of the case at bar, and does not warrant reopening an issue which divided this court in *Anderson* (compare *id.* at p. 741 (dis. opn. by Mosk, J.).)

question,[11] and we cite it here not as direct precedent but as persuasive support for our reading of the constitutional provisions in issue.

Finally, and in the alternative, petitioners contend that even if vacancies in the two superior court judgeships they seek did arise on the date the statute creating them took effect, that date was not January 1, 1976, but August 31, 1975, the day on which the Governor signed the bill enacting the statute (Stats. 1975, ch. 481). Chapter 481, however, contained no declaration of urgency.[12] A new statute goes into effect "on January 1 next following a 90-day period" after its enactment (Const., art. IV, § 8, subd. (c)(1)), unless it is a statute "calling elections" or "providing for tax levies or appropriations for the usual current expenses of the State" (*id.,* subd. (c)(2)). When we construe the latter two exceptions according to the ordinary import of their terms, we are compelled to hold them inapplicable to the measure at hand—a routine bill increasing the number of judges in certain courts and making a special appropriation therefor.

We conclude that chapter 481 took effect on January 1, 1976; that the superior court vacancies here in issue arose on that date; and that the January 1 "following" those vacancies is January 1, 1977. Because "the next general election after" the latter date is the direct primary to be held in June 1978, respondents are under no legal duty to place the offices on the ballot until that time.

In closing, we are constrained to identify one of the contributing causes of the delay which will now ensue in filling these offices by election.[13] The cause is not our reading of the Constitution, but the

[11]The *Wallace* opinion lists cases from eight jurisdictions so holding (197 Cal. at p. 550), and numerous earlier and more recent decisions are in accord. (See, e.g., *State* v. *Crawford* (1956) 207 Ore. 76 [295 P.2d 174, 178]; *Reed* v. *McKeldin* (1955) 207 Md. 553 [115 A.2d 281, 286-287]; *State* v. *Dixon* (La.App. 1941) 4 So.2d 591, 595; *Williams* v. *Mabry* (1940) 176 Tenn. 343 [141 S.W.2d 481, 484]; *State* v. *Wright* (1937) 211 Ind. 41 [5 N.E.2d 504, 505]; *State* v. *Board of Election Com'rs* (1925) 196 Ind. 472 [149 N.E. 69, 72]; *Schaffner* v. *Shaw* (1920) 191 Iowa 1047 [180 N.W. 853, 854]; *Yates* v. *McDonald* (1906) *supra,* 96 S.W. 865, 866-867; *State* v. *Burkhead* (1905) 187 Mo. 14 [85 S.W. 901, 905-906]; see generally 48 C.J.S., Judges, § 31, p. 983.)

[12]Such a declaration would have violated the constitutional .command that "An urgency statute may not create . . . any office" (art. IV, § 8, subd. (d)).

[13]As noted earlier, some delay inevitably flows from the fact that general elections are held only in alternate years. We also note that the election to fill these new offices will be held no later than if the offices had previously existed and their incumbents had died or retired on January 1, 1976.

recent history of amendments to that document. Prior to the 1972 revision of the legislative article, new statutes took effect 90 days after adjournment. (Former art. IV, § 1.) In the case of regular sessions, this meant the statutes became operative in mid-September; and in such circumstances, "the January 1 following the vacancy" (art. VI, § 16, subd. (c)) was usually no more than a few months away. In 1972 the legislative article was amended to provide, inter alia, that new statutes do not take effect until the January 1 following a 90-day period after their enactment. (Art. IV, § 8, subd. (c)(1).) But no corresponding change was made in the quoted language of section 16 of the judicial article, thereby automatically adding two years to the delay in holding elections to fill new judgeships whenever the statute creating them is enacted in a nonelection year.[14] We must assume that the failure to change the judicial article in this respect was a deliberate decision of the draftsmen of the constitutional revision. If it was not, the remedy is not for this court to rewrite any portion of the judicial article but for an appropriate process of amendment to be initiated.

The alternative writ is discharged and the peremptory writ is denied.

Wright, C. J., McComb, J., Tobriner, J., Sullivan, J., Clark, J., and Richardson, J., concurred.

---

[14]Thus prior to 1972 a statute enacted in a nonelection year took effect in that year, and a judicial office added by that statute appeared on the ballot in the following year; but after 1972 a statute enacted in a nonelection year does not take effect until January 1 of the following year, and a judicial office added by that statute does not appear on the ballot until the *next* election year, i.e., two years later. (See fn. 4, *ante.*)