[Civ. No. 40143. First Dist., Div. Three. Sept. 19, 1977.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION et al.,
Defendants and Appellants.

---

## COUNSEL

Donald L. Reidhaar, James E. Holst, Romulus B. Portwood, Gary Morrison, Allen B. Wagner and James Richard, Jr., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Edward P. Hollingshead, and Derry L. Knight, Deputy Attorneys General, O'Melveny & Myers, Bennett W. Priest, Frederick A. Richman and Eliza Stewart for Defendants and Appellants.

---

## OPINION

**DEVINE, J.**\*—The appeals in this case have to do with the interpretation and effect of article XIII, section 3, subdivision (d) of the Constitution of California, which describes among the properties exempt from property taxation: "(d) Property used for libraries and museums that are free and open to the public and property used exclusively for public schools, community colleges, state colleges, and state universities."

### Appeal by the State Board of Equalization

It is contended by the regents, as respondents, that the University of California is included in the term "state universities." The State Board of Equalization (hereinafter Equalization) contends that it was improper

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

to render declaratory judgment at all; but that if it were proper to do so, it was error to hold the term includes the University of California. The term, according to Equalization, refers only to those institutions which, once having been state colleges, now bear the name "university," each with its local designation, such as "San Jose State University," and "San Francisco State University."

A. *Procedural Matters*

Following the enactment of article XIII, section 3, subdivision (d), which became effective November 5, 1974, Equalization requested the Attorney General to give his opinion as to exemption from taxation of property privately owned but used by the University of California (property *owned* by the state is exempt from taxation under article XIII, section 3, subdivision (a)). The Attorney General rendered his opinion to the effect that such property is not exempt. (58 Ops.Cal.Atty.Gen. 678 (1975).) This lawsuit was commenced shortly thereafter. Equalization contends on appeal (1) that no actual controversy exists between the regents and Equalization so that declaratory relief was improper; (2) that whatever relief might be granted to the University of California, it would be purely speculative, in that the university itself cannot initiate the process of tax exemption and it is problematical whether the lessors would be interested in commencing the proceedings; (3) that the assessors of the counties in which property leased to the University of California is situated are proper and indispensable parties; (4) that the university was given by declaratory judgment an advantage which even the lessors would not have. because lessors must use the designated process in order to obtain the benefit of the exemption.

In response to Equalization's points (1) and (2), we give our opinion that there is an actual controversy because Equalization pursuant to its duty to "instruct, advise, and direct assessors as to their duties under the laws" (Gov. Code, § 15608), has given direction that the property in question is taxable and the assessors have acted accordingly. Although, in the event of a favorable decision, the regents may have to seek further remedies, surely it is of concern to the regents, to Equalization, to the assessors and to the public that a determination be made; wherefore, even if that determination be but one step in the process, it is a useful one.

Under the circumstances of the case, it was not necessary, as contended by Equalization under point (3), that the assessors be made parties. Equalization, acting upon the opinion of the Attorney General and upon its own duty to promote uniformity in the assessment of property (Gov. Code, § 15606), has presented quite adequately the defense against the regents' contention. Its counsel is the chief law officer of the state. Moreover, the assessors of the 10 counties in which most of the leased property is situated have been informed of these proceedings by a petition for a writ of mandate. Although an alternate writ was not issued, the assessors were given notice of the controversy; none of them asked to intervene. To invoke the doctrine of indispensability would be to " 'thwart rather than accomplish justice.' " (See *Serrano* v. *Priest* (1976) 18 Cal.3d 728, 753 [135 Cal.Rptr. 345, 557 P.2d 929].) Finally, answering point (4), we observe that the university in seeking declaratory judgment is not attempting to gain a refund of taxes; or to establish a claim of exemption for itself in any particular county; it is seeking a declaration which seems eminently appropriate in order to settle the law.

### B. *Substantive Matter*

Since the constitutional exemption applies to property used by "state universities," it would appear from the wording itself that the University of California, as well as the units of the other establishments, the state universities and colleges, is included. Indeed, unless there be cogent evidence to the contrary, we must accept this conclusion. " 'Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.' " (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 261 [148 P.2d 649].) The words in the Constitution must be taken in their ordinary and common acceptation unless it appears that they were used in a technical sense, because they are presumed to have been so understood by the proposers and by the voters. (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538-539 [58 P.2d 1278]; *Fields* v. *Eu* (1976) 18 Cal.3d 322, 327 [134 Cal.Rptr. 367, 556 P.2d 729]; *Pitts* v. *Reagan* (1971) 14 Cal.App.3d 112, 118 [92 Cal.Rptr. 27].) And although tax exemptions ordinarily are construed strictly, the interpretation must be a reasonable one with due regard for the ordinary acceptation of the language employed and the object sought to be accomplished thereby. (*Fellowship of Humanity* v. *Co. of Alameda* (1957) 153 Cal.App.2d 673, 680-681 [315 P.2d 394]; *Westminister Memorial Park* v. *County of Orange*

(1960) 54 Cal.2d 488, 494-495 [6 Cal.Rptr. 775, 354 P.2d 247]; *Honeywell Information Systems, Inc.* v. *County of Sonoma* (1974) 44 Cal.App.3d 23, 27-28 [118 Cal.Rptr. 422].) The purpose of the exemption here is to obtain lower rentals for the educational institutions. (*Ross* v. *City of Long Beach, supra,* at pp. 262-263.)

With these considerations in mind, we turn to the reasons given by Equalization for its position. The first is that had the University of California been intended as a beneficiary of the exemption, its formal title would have been used. But the term "state university" has also been applied to the University of California.

The statute enacting the institution reads: "A State University is hereby created . . . ." (Stats. 1868, ch. CCXLIV, § 1, p. 248.) Former article XIII, section 15, referred to the University of California as "the State University" (in decreeing that state revenues must first be applied to the support of the "Public School System and the State University") from 1926 until 1974. In 1974, and by the same article XIII (Proposition 8), which contains the passage which is the subject of this appeal, the description of the preferred position for state expenditures was changed from "public school system and the state university" to "the public school system and public institutions of higher education." (Cal. Const., art. XVI, § 8.) Although the words "State University" no longer appeared, the change, it would seem, was not intended to deny that the major institution which had long been "*the* State University" was *a* state university, but simply to recognize the enhanced position of other establishments of advanced educational standing. The California Blue Book (1975), published by the Office of State Printing, says at page 351: "The University of California is a nonsectarian, coeducational *state university.*" (Italics added.) This is not an official definition; but it is one illustration of what presumably informed persons thought of the character of the institution.

It is difficult to believe that legislators, in voting for the constitutional amendment, would have conceived that the expression "state universities" would not include the major institution; and it is even more difficult to believe that a voter at the November 1974 election would think that the exemption intended for the benefit of education generally was not to be made applicable to the prestigious and venerable institution which for more than a century has given so much of substance and inspiration to the intellectual life of the state; which among public institutions has

exclusive jurisdiction over instruction in the profession of law and over graduate instruction in the profession of medicine, dentistry and veterinary medicine; which has sole authority to award the doctoral degree (except that it may agree upon joint awards with the California State University and Colleges); and which is the primary state-supported academic agency for research. (Ed. Code, § 22550.)

Indeed, if the University of California were excluded from the benefit of the exemption by departure from the literal meaning of the term "state universities," it would suffer by comparison with private, nonprofit institutions of higher education. (Cal. Const., art. XIII, § 3, subd. (e).)

Equalization's next point is that historically that part of the Constitution which, since 1879, granted the exemption for educational institutions, referred only to "public schools." (Former art. XIII, § 1.) Under article IX, section 6, state colleges have been designated as part of the public school system since 1946, as have their predecessors, normal schools and teachers' colleges, since 1920. Thus, the property used by state colleges has been exempt from taxation for many years under the public school exemption. Community colleges are declared by statute to be secondary schools and part of the public school system. (Ed. Code, § 66700, formerly § 22650.) But the University of California was held by the Attorney General not to be part of the public school system because it is not included in the descriptive list in article IX, section 6. (Ops.Cal.Atty.Gen. 3837 (1919).)[1]

In 1971, there was created an entity designated "The California State University and Colleges." (Ed. Code, § 22600.) In the same year, Education Code section 23604.5 permitted any particular state college to change its name to "university" on certain conditions. The statute itself changed the names of seven institutions from "college" to "university." In 1974, a massive restructuring of the articles of the state Constitution relating to taxation was proposed by the Legislature and enacted by vote of the electors. Article XIII, section 3, subdivision (d), was created; it takes the place of article XIII, section 1. The new constitutional provision

---

[1]Provisions of the Teachers' Retirement Act were the subject of the opinion. There has been no judicial decision that the University of California was not, for the purpose of the exemption, part of the public school system. But, if we assume it was not, and that, as Equalization argues, it acquiesced (by failure to challenge) in the denial of the exemption during the time it was allowed to "public schools," the passivity, to whatever degree or duration it existed, ended with the inclusion of "state universities" within the exemption.

adds "community colleges, state colleges, and state universities." Equalization cites the explanation given of the revision as follows: " 'The portion of existing Article XIII, Section 1 relating to property used for libraries, museums, and public schools is retained in substance.' Constitutional Revision Task Force On Article XIII, *Proposed Revision of Article XIII* 7 (1974) Cal. Assem. J. 13245." This explanation was adopted by the Legislature as a statement of legislative intent. (Stats. 1974, ch. 311, § 78.)

Equalization also cites this passage in the argument to the voters concerning Proposition 8 on the 1974 ballot: " 'The purpose of this amendment is not to make a change in our present tax structure, but to make the Constitution more readable and workable. To accomplish this goal, some of the present provisions are transferred to statute. None of these transferred provisions, however, are of a substantive nature. This means that the essence of the present Article is retained, but made more understandable.' California Secretary of State, *California Voters Pamphlet,* General Election November 5, 1974, p. 31." Thus, concludes Equalization, no change of substance was made by the enactment of article XIII, section 3, subdivision (d), especially if the strict construction rule as to tax exemption be applied; but to include the University of California would be a substantial change.

But it seems that the quoted explications do not mean that no change at all was to be effected. Until the new article was enacted, community colleges, state colleges and those state universities which had been state colleges had to depend on the "public school exemption" for whatever benefit they could derive from the "use" exemption; thereafter, they have had an independent status in that regard. If any of these classes be held not to be a member of the public school system, or by constitutional amendment, or by statute cease to be such member, the exemption will still apply. Thus, while the amendment did "retain" the substance of what had existed, it also made additions thereto.

■ We discern in the provisions of article XIII, section 3, a purpose to grant exemption from the ad valorem tax of property used by any public educational institution, a purpose which may be accomplished simply by interpreting "state universities" literally; that is, to mean *all* of the public universities, including the University of California.

*Appeal of the Regents re Denial of*
*Writ of Mandate*

■ The regents' petition for a writ of mandate directing Equalization to prescribe rules and to issue instructions to assessors to the effect that property used by the University of California is exempt from taxation was denied by the trial judge. We affirm. Mandate lies only to compel the performance of an act which the law specifically enjoins. (Code Civ. Proc., § 1085.) Although it is Equalization's duty to prescribe rules and to issue instructions designed to promote uniformity throughout the state (Gov. Code, § 15606), the statute does not enjoin the specific rule-making and instruction-dissemination described in the pleading. Mandate is never granted to compel performance of an act upon a merely anticipated refusal (*Northridge etc. Water Dist.* v. *McDonell* (1958) 158 Cal.App.2d 123, 127-128 [322 P.2d 25]); indeed, we anticipate that when this decision becomes final, Equalization and the assessors readily will do whatever is required by law.

*Appeal of the Regents re Judgment for*
*International Business Machines*

■ The regents' complaint for declaratory relief asked for a determination that IBM, as lessor of equipment to the university be legally obligated directly to pass on to the university the economic benefits received by reason of the exemption provided by article XIII, section 3, subdivision (d) of the Constitution of California. The trial court held that there is no such legal obligation. The regents place their claim on two bases: provisions of their master lease with IBM, and public policy. It is to be noted that the object of the regents is to have the *economic benefit* passed on so that the rental would be reduced whether or not the lessor sought or collected a refund. (If the saving must be passed on, there might be no incentive for the lessor to go about claiming it.) What may be the result if an actual, measurable refund or saving be realized, we need not decide.

But the means of accomplishing the purpose cannot be a remaking by the court of the parties' contract. The master lease contract of IBM with the regents, made in 1964, provides that there shall be added to the specified rentals "amounts equal to any taxes, however designated, levied or based on such charges or on this Agreement or the machines or their use, including state and local privilege or excise taxes based on

gross revenue, and any taxes or amounts in lieu thereof paid or payable by IBM in respect to the foregoing which are in effect at the time such individual purchase orders specified in paragraph 1 may be issued and accepted, exclusive, however, of personal property taxes assessed on the machines and taxes based on net income.

"It is understood, however, that no charge shall be made for any taxes for which University furnishes IBM with a valid tax exemption certificate."

The regents admit that no specific "charge" in the amount of ad valorem personal property taxes is tacked on to the rental. But they argue that the regents have been "charged" for these taxes nonetheless, because, surely, IBM would have figured them into its pricing. Perhaps this is so, but whether a specific calculation was made is doubtful in view of IBM's uniform pricing. Besides, the contract's provision that no charge shall be made when a tax exemption is provided, plainly refers, when considered with the immediately preceding paragraph, to the subject of *not adding* to the rental taxes which need not be paid because of any exemption. It does not refer to *subtracting* from the rental whatever may be saved by use of the exemption.

To say that such a provision as that proposed should be in the contract is not to say that it is there now. This does not mean that the purpose of the constitutional amendment cannot be achieved.[2] The contract is subject to termination upon three months' notice. In its brief IBM suggests negotiation despite its uniform pricing structure.

The regents contend that over and above the interpretation of the contract there is the matter of public policy and that this requires that the economic benefit of the exemption be transferred to the university. But the constitutional amendment does not purport to impose a duty upon lessors. Perhaps if the exemption actually be claimed by IBM, and an ascertained amount be saved, it must be held, upon a theory of constructive trust, for the benefit of the university. Perhaps a duty can be and ought to be imposed by statute, at least on parties entering a new contract (whether an original one, a renewal, or one substituted after cancellation). In fact, a statute has been enacted (Stats. 1977, ch. 522) in

---

[2]For example, Xerox Corporation has contracted in substance to "pass on" the benefits in the event a final decision of the courts holds that the exemption applies to the University of California.

which it is required that in the case of new leases of property for church purposes, the tenant must receive a reduction of rent because of the church exemption unless the lease provides that the exemption has been taken into account in the fixing of the rent. The statute defines precisely the method of effecting the credit.

But whatever may be done, respondent is not presently obliged by contract or by law to act with regard to the construction which we have given above to the exemption as to property used by the University of California.

The judgment is affirmed. Each party to bear its own costs.

Draper, P. J., and Good, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.