[Civ. No. 47813. First Dist., Div. One. Feb. 27, 1981.]

CHARLES C. KEHRLEIN, as Trustee, etc.,
Plaintiff and Appellant, v.
CITY OF OAKLAND et al., Defendants and Respondents.

COUNSEL

George M. McLeod, Charles J. Hammer, Koford, McLeod & Hammer and Mitchell, Silberberg & Knupp for Plaintiff and Appellant.

George Deukmejian, Attorney General, and John J. Klee, Jr., Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Appellant.

Michael Lawson, City Attorney, Jeffrey N. Haney, Acting City Attorney, Theodore R. Lakey, Assistant City Attorney, and Michael W. Stamp, Deputy City Attorney, for Defendants and Respondents.

Robert W. Parkin, City Attorney (Long Beach), John R. Calhoun, Assistant City Attorney, Phil J. Shafer, Deputy City Attorney, Charles Liberto, City Attorney (Arcadia), Marvin E. Helon, City Attorney (Clovis), Bush, Achley, Milich & Hollinan, Gail Hutton, City Attorney (Huntington Beach), Stradling, Yocca, Carlson & Routh, John J. Murphy, City Attorney (Lynwood), Evelynn M. Finn, City Attorney (Pasadena), P. Lawrence Klose, City Attorney (Petaluma), Daniel J. Curtin, Jr., City Attorney (Walnut Creek), Gibson, Dunn & Crutcher, Theodore B. Olson, Gregory G. Hollows, Norman Lieberman, City Attorney (Monterey Park), John R. Shaw, City Attorney (Pittsburg), Stanley E. Remelmeyer, City Attorney (Torrance), James P. Jackson,

City Attorney (Sacramento), and James A. Hildebrand, City Attorney (Sunnyvale), as Amici Curiae on behalf of Defendants and Respondents.

OPINION

NEWSOM, J.—Appellant Charles C. Kehrlein, acting as trustee for the estate of Murrey L. Johnson, an apartment house owner in the City of Oakland, appeals from an adverse judgment in a declaratory relief action. By that action, appellant sought to invalidate ordinances enacted by the Oakland City Council amending the business license tax rates imposed upon all businesses pursuant to chapter V, article I, of the Oakland Municipal Code. Appellant's complaint alleged that the ordinances were void as violative of article XIII A of the state Constitution (passed as Prop. 13 by the California voters in June 1978).

The trial court disagreed, and rendered judgment after trial in favor of respondents (City of Oakland and Jennings Smith, treasurer) on February 6, 1979, ruling that article XIII A was not applicable to the subject ordinances because they "did not constitute the imposition of a special tax" within the meaning of section 4 of article XIII A.

The facts pertinent to the issues raised on appeal are not significantly disputed, and may be summarized as follows.

On October 23, 1975, the Oakland City Council enacted Ordinance No. 9225 CMS creating a business license tax, codified as chapter V, article I, of the Oakland Municipal Code. This tax ordinance was the forerunner of the ordinances challenged by appellant. It divided municipal professions and businesses into 11 classifications, and, on the basis of a consultant's study, established different rates for the classifications to reflect anticipated relative profit margins of businesses within each classification.

Ordinance No. 9225 CMS expressed tax rates for the various classifications as a percentage of the business gross receipts earned in Oakland. The rate initially imposed upon apartment house owners was $.90 per thousand dollars of gross receipts.

It is conceded by all parties that revenues received from the business license tax are paid into the city's general fund to be expended for *general* governmental services.

On June 6, 1978, Proposition 13 was approved by California voters and added to the state Constitution as article XIII A.

On June 19, 1978, the Oakland City Council amended chapter V, article I, of the Oakland Municipal Code by enacting Ordinances No. 9023 CMS and 9625 CMS (hereinafter referred to as the ordinances), changing the business license tax rates imposed upon all businesses. The ordinances were made effective immediately.

The ordinances were adopted ostensibly because the Oakland City Council felt that adjustments to the existing tax rates were necessary after the passage of Proposition 13 and its attendant anticipated 57 percent reduction in property tax revenues. Their evident purpose was to maintain an equitable tax rate structure among the various business classifications, based upon relative profit margins. Certain types of business, it was believed, and particularly apartment house owners, would experience a dramatic increase in profit margins as the result of article XIII A. The ordinances were also enacted as a general response to the anticipated loss of municipal revenues due to the passage of article XIII A, and in fact, the anticipated increase in tax revenues from all classifications pursuant to the ordinances was expected to treble antecedent revenues.

Article XIII A contains five sections pertinent to this action. Sections 1 and 2 respectively limit tax rates and set assessment standards for real property. Section 3 essentially restricts the authority of the state Legislature to change state taxes by imposing a two-thirds vote requirement.

Sections 4 and 5, however, contain the provisions of article XIII A which are directly at issue here. Section 4 places limitations on the taxing authority of local governmental entities. It states: "Cities, Counties and special districts, by a two-thirds vote of the qualified electors of such district, may *impose special taxes* on such district, except ad valorem taxes on real property or a transaction tax or sales tax on the sale of real property within such City, County or special district." (Italics added.)

Section 5 provides for the effective date of the article as follows: "This article shall take effect for the tax year, beginning on July 1 following the passage of this amendment, except Section 3 which shall become effective upon the passage of this article."

■ Respondents renew on appeal their argument, offered at trial, that article XIII A, by its terms, was not effective until July 1, 1978, thereby rendering the taxation restrictions of section 4 inapplicable to the subject ordinances, which were concededly effective prior to that date.

Appellant insists that it was not the intent of article XIII A to make section 4 thereof effective on July 1, 1978, relying upon section 4 of article XVIII of the state Constitution which provides, in pertinent part, that "A proposed amendment or revision shall be submitted to the electors and if approved by a majority of votes thereon takes effect the day after the election [in this case June 7, 1978] *unless the measure provides otherwise....*" (Italics added.)

It is appellant's contention that article XIII A does not *provide otherwise*, at least with regard to section 4. Appellant particularly focuses upon the language "it shall take effect *for the tax year beginning* on July 1" as support for the proposition that the drafters intended only sections 1 and 2 of the article to have a delayed effective date. The limited purpose of section 5, appellant argues, was to delay the effective date of the new real property tax rates and valuation standards embodied in sections 1 and 2 until the end of the tax year to avoid the disruption, burden and expense on tax assessors and collectors which would undoubtedly have resulted had the revised rate and assessment formulas gone into effect during the 1977 tax year.[1]

Nothing in article XIII A, however, supports appellant's interpretation. On the contrary, an effective date of July 1, 1978, is dictated by the unambiguous language of the constitutional amendment. Article XIII A specifically states that, with the exception of section 3, it shall take effect on July 1. While section 3 was specifically made effective immediately, no such provision was made applicable to section 4.

---

[1]Appellant points out that if the operative date of sections 1 and 2 had not been deferred until July 1, 1978, cities and counties would have been faced with the task of sending out new tax bills and refunding previously collected tax payments.

In light of the clear language of section 5, only a strained interpretation of article XIII A could lead to the result urged by appellant. Such an interpretation would be contrary to rules of construction.

"It is a cardinal rule of construction that words or phrases are not to be viewed in isolation; instead, each is to be read in the context of the other provisions of the Constitution bearing on the same subject. (*Wallace* v. *Payne* (1925) 197 Cal. 539, 544. . . .) The goal, of course, is to harmonize all related provisions if it is reasonably possible to do so without distorting their apparent meaning, and in so doing to give effect to the scheme as a whole. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596. . .; *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637. . .; *Elder* v. *Hollopeter* (1931) 214 Cal. 427, 430. . . .) Strained interpretation, or construction leading to unreasonable or impractical results, is to be avoided. (*Pollack* v. *Hamm* (1970) *supra*, 3 Cal.3d 264, 273; *Bakkenson* v. *Superior Court* (1925) 197 Cal. 504, 510-512. . . .)" (*Fields* v. *Eu* (1976) 18 Cal.3d 322, 328 [134 Cal.Rptr. 367, 556 P.2d 729].)

Had the drafters of article XIII A intended section 4 to be immediately effective, they could simply have included therein a provision such as that expressly made applicable to section 3. Without such a provision, this court cannot ascribe to the amendment an intent which is contrary to the plain meaning of its terms. As explained in *In re Quinn* (1973) 35 Cal.App.3d 473 [110 Cal.Rptr. 881], ". . . a constitutional amendment should be construed in accordance with the natural and ordinary meaning of the words as generally understood at the time of its enactment. (*Ex parte Anderson* (1901) 134 Cal. 69, 74. . .; *Pitts* v. *Reagan* (1971) 14 Cal.App.3d 112. . .; *County of Los Angeles* v. *Craig* (1940) 38 Cal.App.2d 58. . .; *McMillan* v. *Siemon* (1940) 36 Cal.App. 2d 721, . . . .) Accordingly, where it does not appear that words used in a constitutional amendment were used in a technical sense, the voters must be deemed to have construed the amendment by the meaning apparent on its face according to the general use of the words employed." (*Id.*, at p. 482.)

"'When the words of a statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.'" (*Estate of Kramme* (1978) 20 Cal.3d 567, 572 [143 Cal.Rptr. 542, 573 P.2d 1369].)[2] To

[2]While *Estate of Kramme, supra,* 20 Cal.3d 567, deals with interpretation of a statute, "Rules of construction and interpretation that are applicable when considering

interpret article XIII A as imposing an immediate effective date for other than section 3 would be to imply a provision, ignore existing provisions, and contradict the plain meaning of the amendment.

In fact, based upon the unambiguous language of section 5, appellate decisions have specifically ruled that section 1 of article XIII A was effective July 1, 1978. In *Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855 [167 Cal.Rptr. 820, 616 P.2d 802], at page 862, the California Supreme Court declared that, "The tax rate and valuation limitations took effect for the tax year beginning July 1, 1978, pursuant to section 5 of article XIII A and the implementing legislation subsequently adopted."

In *Metropolitan Water Dist v. Dorff* (1979) 98 Cal.App.3d 109 [159 Cal.Rptr. 211], the court approved an ad valorum tax on real property which, although it exceeded the 1 percent limitation imposed by section 1, was approved by the voters prior to July 1, 1978. The court responded as follows to appellant's contention that the property tax relief purpose of the amendment required imposition of an "immediate effective date" notwithstanding the plain meaning of section 5: "... appellant contends that the arguments in favor of the adoption of article XIII A show that the purpose of such constitutional provision is to avoid the burden of excessive taxation of real property. Be that as it may, such arguments cannot supply language which does not appear in section 1, subdivision (b) of article XIII A. That provision creates an exception to the 1 percent ad valorem property tax limitation for the payment of indebtedness approved by the voters before July 1, 1978, but does not state that the exception applies only to real property which was subject to taxation for the payment of such indebtedness prior to that date. '"Courts are no more at liberty to add provisions to what is declared [in the Constitution] in definite language, than they are to disregard existing express provisions [of the Constitution]."' (*Ross v. City of Long Beach* (1944) 24 Cal.2d 258, 260....)" (*Id.*, at p. 115.)

The Attorney General, in opinions dealing with the interpretation of various aspects of article XIII A, has also recognized that the language of section 5 mandates an effective date of July 1, 1978, for all sections except 3, including the provisions of section 4. (62 Ops.Cal.Atty.Gen. 673, 676 (1979); 62 Ops.Cal.Atty.Gen. 663, 663-664 (1979); 62 Ops.

---

statutes are equally applicable in interpreting constitutional provisions." (*County of Fresno v. Malmstrom* (1979) 94 Cal.App.3d 974, 979 [152 Cal.Rptr. 777].)

Cal.Atty.Gen. 209, 212 (1979).) These opinions are, of course, persuasive, though not binding. (*Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 499 [159 Cal.Rptr. 494, 601 P.2d 1030]; *D'Amico* v. *Board of Medical Examiners* (1970) 6 Cal.App.3d 716, 724 [86 Cal.Rptr. 245].)

Appellant's contention that section 5 only intended to delay the effective date of sections 1 and 2 to avoid the burden and disruption resulting from an earlier operative date cannot be accepted in light of the plain meaning of the amendment. "'Possible or even probable meanings, when one is plainly declared in the instrument itself, the courts are not at liberty to search for elsewhere.'" (*Ross* v. *City of Long Beach* (1944) 24 Cal.2d 258, 261 [148 P.2d 649]; *Regents of University of California* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 660, 665 [140 Cal.Rptr. 857].)

The testimony of a codrafter of the amendment, to the extent that it is contrary to the plain meaning of the enactment, is also not persuasive[3] for it reflects merely the personal view of one of the drafters rather than the understanding of the voters. (See *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-590 [128 Cal.Rptr. 427, 546 P.2d 1371]; *County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 726-727 [119 Cal.Rptr. 631, 532 P.2d 495]; *Lewis* v. *Ryan* (1976) 64 Cal.App.3d 330, 335, fn. 1 [134 Cal.Rptr. 355].) Moreover, such an "extrinsic aid" is unnecessary because the language of section 5 is unambiguous. (*Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 152 [145 Cal.Rptr. 573].)[4] "The words in the Constitution must be taken in their

---

[3]Mr. Gann testified that the intent of section 5 "was that any taxes collected for the funding of the government of ours, whether it be state or local, would be effective after July 1, or the next fiscal year, which was July 1st, 1978." Appellant argues that this testimony favors the interpretation of section 5 advanced by appellant. Such a conclusion is questionable, as Mr. Gann's testimony does not clarify the meaning of section 4 or lend support to appellant's argument.

[4]If the language of section 5 required us to resort to an extrinsic aid in support of our conclusion, it is found in the opinion of the legislative analyst contained in the California voters' pamphlet, which notes that the property tax limit "could be exceeded only to repay bonded debt approved by the voters *before* July 1, 1978." The opinion further declares that "[c]ommencing with [the] fiscal year beginning July 1, 1978, [the measure] would result in ... [a] restriction on future ability of local governments to finance capital construction by sale of general obligation bonds."

In *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, at page 246 [149 Cal.Rptr. 239, 583 P.2d 1281], and subsequently in *Board of Supervisors* v. *Lonergan, supra*, 27 Cal.3d 855 at page 866, the California Supreme Court directed that the ballot summary and analysis may properly be resorted to as a construction aid to determine "the probable meaning of *uncertain* language." However, as we find the statutory language of section 5 clear and unambiguous, we

ordinary and common acceptation unless it appears that they were used in a technical sense, because they are presumed to have been so understood by the proposers and by the voters." (*Regents of University of California* v. *State Bd. of Equalization, supra,* 73 Cal.App.3d 660, 665.) In our view, the ordinary and common meaning of the language of article XIII A could have only been understood by the voters as mandating an effective date of July 1, 1978, for section 4.

We thus conclude that the tax ordinances enacted and made operative by the Oakland City Council on June 19, 1978, were not affected by article XIII A. Because the ordinances predate article XIII A, no compliance with the two-thirds requirement of section 4 was necessary. Consequently, the ordinances were validly passed by the Oakland City Council pursuant to the general taxing authority of the municipality. (See Cal. Const., art. XI, § 5, subd. (a); *Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 392 [146 Cal.Rptr. 558, 579 P.2d 449].)[5]

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied March 27, 1981, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied April 22, 1981.

---

need not buttress our conclusion by reference to the voters' pamphlet. (*Board of Supervisors* v. *Lonergan, supra,* at p. 866.)

[5]Resolution of the effective date issue in favor of respondent provides a sufficient basis, in itself for affirming the judgment, even though the trial court relied upon a separate ground as the basis for its decision. In so ruling, we note the well settled principle that a correct decision will not be disturbed on appeal simply because it is based upon reasoning not adopted by the appellate court. (*D'Amico* v. *Bd. of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

Although our determination of the effective date issue disposes of the present appeal, we would ordinarily address the remaining issues raised by the parties because they are of substantial public concern. However, because these same significant issues are thoroughly discussed and resolved in our opinion in *City and County of San Francisco* v. *Farrell* (Cal.App.) also filed on this date, to avoid repetition we merely refer to that opinion and the discussion of all issues pertinent to this appeal contained therein.