[No. AO16429. First. Dist., Div. Four. May 3, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
8,000 PUNCHBOARD CARD DEVICES, Defendant;
BOYS' CLUB OF HAYWARD, Defendant and Respondent.

COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Herbert F. Wilkinson and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Appellant.

James D. Hollister for Defendant and Respondent.

OPINION

**CALDECOTT, P. J.**—The People appeal from a judgment in favor of the Boys' Club of Hayward upon a complaint for declaratory relief filed by the Alameda County District Attorney. The district attorney had sought authorization to destroy 8,000 punchboard card devices seized from the Boys' Club of Hayward on July 14, 1981. The cards contained winning numbers or symbols

concealed by opaque coverings and were being sold for 50 cents each as bingo games for charity.

In 1976 the electorate approved the addition of article IV, section 19, subdivision (c), to the California Constitution. The new subdivision provides that "the Legislature by statute may authorize cities and counties to provide for bingo games, but only for charitable purposes."

Enabling legislation had already been enacted in 1975 to authorize bingo games if the constitutional amendment was approved. The legislation added section 326.5 to the Penal Code and defined "bingo" as "a game of chance in which prizes are awarded on the basis of designated numbers or symbols on a card which conform to numbers or symbols selected at random." (Former Pen. Code, § 326.5, subd. (n).) Not included in this definition of bingo were punchboards, which since 1953 have been declared by Penal Code section 330c to be illegal slot machines. A punchboard is defined in Penal Code section 330c as "any card, board or other device which may be played or operated by pulling, pressing, punching out or otherwise removing any slip, tab, paper or other substance therefrom to disclose any concealed number, name or symbol."

In 1979 the Legislature amended the statutory definition of charitable "bingo" games to add, "Notwithstanding Section 330c, as used in this section, the game of bingo shall include cards having numbers or symbols which are concealed and preprinted in a manner providing for distribution of prizes." (Former Pen. Code, § 326.5, subd. (n).)[1] The parties agree that the punchboard card devices in the present case are within this statutory definition. Appellant contends, however, that the amended statutory definition is unconstitutional, because the electorate intended the term "bingo" in the constitutional amendment to be defined as it was in the original enabling legislation. (See 63 Ops.Cal.Atty.Gen. 524, 531 (1980) [stating opinion that punchboard bingo is not constitutionally authorized].)

■ When a word in the California Constitution has a doubtful or obscure meaning or is capable of several interpretations, a statutory construction of that word is to be afforded substantial deference. (*California Housing Finance Agency* v. *Patitucci* (1978) 22 Cal.3d 171, 175 [148 Cal.Rptr. 875, 583 P.2d 729].) This rule of deference arises from the fact that the state Constitution, unlike the federal Constitution, is a limitation on the power of the Legislature rather than a grant of power to it. Any constitutional limitation on legislative power is to be narrowly construed, and a strong presumption of constitutionality supports the Legislature's acts. (*Ibid.*) The Legislature's efforts to interpret a

---

[1] In 1981 former Penal Code section 326.5, subdivision (n), was numbered as Penal Code section 326.5, subdivision (o).

■ **621**

word in the state Constitution are to be upheld "unless they are disclosed to be unreasonable or clearly inconsistent with the express language or clear import of the Constitution." (*Id.*, at p. 177.) Indicators of the intended meaning of a constitutional amendment include the ballot arguments favoring the amendment (*id.*), the common meaning of the words used, unless it appears they were used in a technical sense (*Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 152 [145 Cal.Rptr. 573]; *Regents of University of California* v. *State Bd. of Equalization* (1977) 73 Cal.App.3d 660, 665 [140 Cal.Rptr. 857]), and any statutory definitions existing at the time of the amendment (*County of Fresno* v. *Malmstrom* (1979) 94 Cal.App.3d 974, 979 [156 Cal.Rptr. 777]).

■ None of these indicators demonstrates any "clear import" of the constitutional amendment at issue here. Nothing in the ballot arguments favoring the measure (see 63 Ops.Cal.Atty.Gen., *supra,* at pp. 532-536) sheds light on the intended meaning of the word bingo. Appellant argues that the original enabling legislation was brought to the attention of the electorate in the voters' pamphlet (see 63 Ops.Cal.Atty.Gen., *supra,* at pp. 532, 535), but the pamphlet did not describe the statutory definition therein. The Attorney General has himself previously asserted that the electorate was "not generally aware of the broad definition the Legislature had given the term 'bingo' in the statute which had not become operative law" when the constitutional amendment was passed. (63 Ops.Cal.Atty.Gen., *supra,* at p. 529.)

Appellant argues that the "traditionally understood" definition of bingo is that of a game that involves "drawing numbers at random and covering spaces on a card." Various sources indicate, however, that the term "bingo" may include any number of different but related games. One source identifies bingo as "[a] game of the same general class as 'Tango' or 'Tango Games.'" Tango games are said to include a number of similar games (including "Beano," "Bingo," "Bonanza," "Horse Racer," "Keno," "Monaco," "Plaza B," "Plaza 7," "Ritz," "Skill Ball," and "Wheel O") in which the winner covers a required number of figures in a row on a card, with the figures to be covered determined in a variety of ways. (38 C.J.S., Gaming, § 1, pp. 38, 43.) Another source states that the term "bingo" has previously been used to describe raffles run by motion picture houses (in which moviegoers were given a numbered slip of paper, and a duplicate was placed in a paper bag and subject to a drawing or a wheel was spun to determine the winning number), as well as a 19th century game played with dominoes. (Scarne, Scarne's New Complete Guide to Gambling (1974) p. 209.) In 1951 the California Attorney General determined a number of games to be "variations of the game commonly called Bingo," including "Canast-O," "Black-Out," "Vogue," "Jade," "Cameo," and "Shamrock" (in which numbers on a card are filled as determined by players' tosses of balls into numbered cups), and "Skill Quiz Lecture," "Skill Quiz Game," and "Klu Quiz Game" (in which players are required to fill a

row of numbers on a card and then answer a quiz question correctly). (17 Ops.Cal.Atty.Gen. 63, 64 (1951); see also *People* v. *Shira* (1976) 62 Cal.App.3d 442, 464 [133 Cal.Rptr. 94] [declaring game of "Ringo" to be an illegal lottery].) The Attorney General suggested that these games were created in an attempt to evade the prohibition against bingo "by slightly varying the activity with the claim that something different and legal has resulted." (17 Ops.Cal.Atty.Gen., *supra,* at p. 68.) No common meaning of the term bingo emerges.

Neither the express language of article IV, section 19, subdivision (c), nor any clear import to be divined from the constitutional amendment, demonstrate that the statutory definition of bingo as amended in 1979 is unreasonable or clearly inconsistent with the Constitution. We therefore cannot accept the Attorney General's view that punchboard bingo is not constitutionally authorized (63 Ops.Cal.Atty.Gen., *supra,* at p. 531), and uphold the amended statutory definition. (Cf. *California Housing Finance Agency* v. *Patitucci, supra,* 22 Cal.3d at pp. 177-179 [upholding legislation defining words in constitutional amendment on low rent housing projects].)

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.