TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

----------------------------------------------------------------
                                    :
        OPINION                     :        No. 87-701
                                    :
          of                        :        <u>DECEMBER 22, 1987</u>
                                    :
JOHN K. VAN DE KAMP                 :
  Attorney General                  :
                                    :
CLAYTON P. ROCHE                    :
Deputy Attorney General             :
                                    :
----------------------------------------------------------------


THE HONORABLE JOHN W. WITT, CITY ATTORNEY, CITY OF SAN DIEGO, has requested an opinion on the following question:

Does an electronic system of bingo which substitutes a hand computer with stored bingo "card" matrices for the traditional paper or cardboard bingo cards qualify as bingo within the meaning of section 326.5, subdivision (o) of the Penal Code?

CONCLUSION

An electronic system of bingo which substitutes a hand computer with stored bingo "card" matrices for the traditional paper or cardboard bingo cards does not qualify as bingo within the meaning of section 326.5, subdivision (o) of the Penal Code.

ANALYSIS

At the June 8, 1976 primary election the voters approved an amendment to article IV, section 19 of the California Constitution to provide in subdivision (c) that "the Legislature by statute may authorize cities and counties to provide for bingo games, but only for charitable purposes."

Implementing this constitutional provision is section 326.5 of the Penal Code.[1]  That section specifies in great detail the conditions under which bingo games may be conducted by charitable and other nonprofit organizations "for charitable purposes" where permitted by local ordinance.  The background of the approval by the voters of article IV, section 19, subdivision (c) in 1976, and the restrictions set forth in section 326.5, have been chronicled by us in prior opinions, and reference is made thereto for these details.  (See 67 Ops.Cal.Atty.Gen. 528 (1984), 63 Ops.Cal.Atty.Gen. 524 (1980).)  Suffice it to say herein that the background of the Constitutional Amendment provides little or no clue as to what the voters understood the term "bingo" to mean in 1976 other than perhaps "traditional bingo," and the Penal Code restrictions go to matters such as who may participate in bingo games, who may staff and conduct them, the monetary limits for prizes, and the manner in which the proceeds of the games may be used.

For the purposes of section 326.5, and "charitable bingo," subdivision (o) provides the definition.  It states:

> "(o) As used in this section 'bingo' means a game of chance in which prizes are awarded on the basis of designated numbers or symbols <u>on a card</u> which conforms to numbers or symbols selected at random.  Notwithstanding Section 330c, as used in this section, the game of bingo shall include cards having numbers or symbols which are concealed and preprinted in a manner providing for distribution of prizes.  The winning cards shall not be known prior to the game by any person participating in the playing or operation of the bingo game.  All such preprinted cards shall bear the legend, 'for sale or use only in a bingo game authorized under California law and pursuant to local ordinance.'  It is the intention of the Legislature that bingo as defined in this subdivision applies exclusively to this section and shall not be applied in the construction or enforcement of any other provision of law."  (Emphasis added.)

The second, third and fourth sentences were added by the Legislature in 1979.  (Stats. 1979, ch. 1006.)

In 63 Ops.Cal.Atty.Gen. 524 (1980), <u>supra</u>, this office concluded that, despite the addition of the foregoing sentences in 1979, a system of "punchboard bingo" was not authorized by article IV, section 19, subdivision (c) of the California Constitution.  We reasoned that the 1979 amendment by the Legislature was in excess of its powers, since it in essence was an attempt to

---

[1]All section references are to the Penal Code unless otherwise indicated.

change the term "bingo" as used in the Constitution. The courts ruled otherwise. In People v. 8,000 Punchboard Card Devices (1983) 142 Cal.App.3d 618 the court held that in 1976, when the voters amended the Constitution, there was no common meaning of the term "bingo"; that accordingly, it was within the Legislature's power to "interpret" that term for purpose of article IV, section 19.

In 67 Ops.Cal.Atty.Gen 528 (1984), supra, we concluded that a particular coin-operated computerized electronic video machine, played by a single player, and which 1) displayed a facsimile of a bingo card on its screen, and 2) which randomly selected numbers which might result in a winning bingo pattern, was not "bingo" for purposes of section 326.5. We concluded that, pure and simply, this machine was an illegal slot machine under the provisions of sections 330a, 330b and 330.1.

In this, our third opinion concerning whether a particular game qualifies as "bingo" for purposes of section 326.5, we examine a completely different type of "electronic bingo", and one which virtually mimics "traditional" bingo, except that it has moved the game into the computer age and as such dispenses with the traditional paper or cardboard bingo cards.

We have been supplied with and have examined in detail a great deal of information concerning the electronic bingo which is the subject of this request. This particular electronic bingo system was the subject of an injunctive action by its manufacturer and a church against the City of National City in the San Diego Superior Court, Case No. 563569. The court concluded that the game did qualify as "bingo" for purposes of section 326.5, subdivision (o).

In addition to the court's Statement of Decision, we have been supplied with affidavits presented therein, a partial transcript of testimony, as well as arguments presented to us by the manufacturer and its attorney. In brief, the electronic bingo system operates with a point-of-sale terminal and individual handsets for each player. The point-of-sale terminal is a computer which is programmed so as to contain a permanent library of bingo "cards" - presently 50,000. Each handset has on its face across the top the words BINGO above a grid of 25 squares. Below are input keys which will permit the player to input numbers into his handset. The handset is capable of storing up to 40 bingo card matrices, that is, facsimiles of bingo cards which may be "called-up" and examined sequentially by pressing a button on the handset.

To play bingo under this system, the player will purchase a certain number of "cards" the same as he would in traditional bingo. His handset is then linked to the point-of-sale terminal and the number of cards purchased are "transferred" to the handset (up to 40). All "cards" contained in the point-of-sale terminal have a serial number. A paper copy of all such cards, duly serialized, are in the possession of the operator of the game and are available for comparison with those "transferred" to the headset. Each player is given a receipt showing the number of cards purchased, the serial number of the cards purchased, and the date, time and amount of the sale. As in traditional bingo, the house will randomly select numbers and call them out. Instead of covering a number, the player will punch in the number called. That will "cover" that number in his handset on all "cards" programmed therein. If and when the player attains bingo, the handset will emit a musical sound

and display the serial number of the winning "card." The "card" can then be called up and displayed on the grid of the handset, and the bingo verified.

Accordingly, the only difference between the manner in which traditional bingo and the system of electronic bingo is played is that the handset with pre-programmed cards is used instead of the usual paper or cardboard bingo cards. Is this distinction a critical distinction for purposes of section 326.5? We believe that it is.

A number of arguments have been presented both pro and con as to why this particular system of electronic bingo should be considered to be "bingo" for purpose of section 326.5. Initially, it is urged that this is traditional bingo, except that the handset does what the bingo card would otherwise do. It is also pointed out that this type of bingo acts as an "equalizer" between highly skilled players and others. We are informed that a highly skilled player can play up to about eighteen cards at a time, whereas those less skilled may be restricted to just a few cards. Under electronic bingo, all may play on an equal footing. We are also advised that this system of electronic bingo has such automatic and virtually foolproof accounting and other safeguards built into the point-of-sale terminal and the handsets, that skimming and the introduction of illicit cards and other fraud on or by players is a virtual impossibility.

On the other side of the coin it is pointed out that with the electronic, computerized handset, the player is not able to see what is going on with his "cards." Accordingly, much of the excitement, anticipation, and competition inherent in "traditional" bingo is absent. It is also pointed out that with the handset-computer, the player cannot personally determine if the computer is in fact functioning properly. He must leave such determination to faith. Nor can the player monitor other players to ensure that they are not, somehow, cheating. Finally, it is urged that this system of electronic bingo makes monitoring of games more difficult for law enforcement personnel, who are unable to monitor games so as to see at a glance exactly what is transpiring at given moment.

However, in the final analysis, we must look to the wording of the statute. As recently stated by the California Supreme Court in Schmidt v. Superior Court (1987) 43 Cal.3d 1060, 1065-1066, where it concluded that the word "adults" did not mean only "senior citizens":

"One of the basic principles of statutory construction is that courts must give effect to statutes according to the ordinary import of the language used in framing them. (California Teachers Assn. v. San Diego Community Collect Dist. (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (People v. Knowles (1950) 35 Cal.2d 175, 183 [217 P.2d 1]; accord, California Teachers Assn. v. San Diego Community College District, supra, at p. 698.)

"Plaintiffs nevertheless urge us to look to the legislative intent behind section 798.76. They argue that in spite of ordinary meaning, other statutes and public

policy compel the conclusion that the section's reference to 'adults' must be construed to mean 'senior citizens'.

"Before proceeding, we note that recourse to the plain meaning of the statute or to the legislative intent are not, as they might seem, contradictory principles of statutory construction.  It is true, of course, that the former concentrates on the language of the statute itself, while the latter looks to matters extrinsic to the statute.  But both principles aim to effectuate the legislative intent.  <u>As in interpreting any language, we begin with the presumption that the words chosen are used in a conventional manner and communicate the intent of the speaker.  Only when there is some reason to believe that the speaker is not using a term in its literal sense, or when there is ambiguity, is it necessary to look beyond conventional meaning</u>.  We therefore must presume that when the Legislature referred to adults, it meant adults.  Because there is no doubt that the conventional meaning of the term includes persons over 25 years of age, we should deviate from that construction only for compelling reasons-for example, if it can be clearly established that the Legislature did not intend the word to be understood in its ordinary sense." (Emphasis added.)

Section 326.5, subdivision (o) provides as material herein that "[a]s used in this section 'bingo' means a game of chance in which prizes are awarded on the basis of designated numbers or symbols <u>on a card</u> which conform to numbers or symbols selected at random." (Emphasis added.)  It goes without saying that the handsets at issue herein do not have thereon "numbers or symbols on a card."  There is no card at all.  It is only through the computer program that electronic <u>representations</u> of bingo cards may be called-up and displayed on the handset's screen.  These representations are no more bingo <u>cards</u> than persons depicted on a television screen are the persons themselves.

Furthermore, the term "card" is not an ambiguous term.  Nor is there any reason to believe that the Legislature, when it enacted section 326.5 in 1976 intended the term other than in the literal sense.  The particular electronic bingo system at issue herein has been just developed in the last several years.  Nor are we aware that electronic bingo was prevalent in California in 1976 when section 326.5 was enacted.  In short, when the Legislature spoke of "numbers or symbols on a card", we believe that it means just that, "on a card," not buried in a computer somewhere to be electronically "called-up."

In so concluding, we in no way intend to disparage the electronic bingo system at issue herein.  As it has been explained to us, it appears to be a highly sophisticated and workable system.  In our view, however, it just does not fall within the meaning of section 326.5, subdivision (o), so as to qualify it for use in "charitable bingo."  In our opinion, the question whether this type of electronic bingo, <u>or any type of electronic bingo</u>, should be used for "charitable bingo" is a matter to be addressed to the Legislature.  That body then can study the matter, take proper testimony, and make the requisite policy decisions as to whether such system or systems are in fact better than, worse than, or the equivalent of bingo which is played on traditional bingo cards.  The Legislature has not, as yet, had an opportunity to do this.  It should be given such opportunity.

Accordingly, we conclude that an electronic system of bingo which substitutes a hand computer with stored bingo card matrices for the traditional paper or cardboard bingo cards does not qualify as bingo within the meaning of section 326.5, subdivision (o) of the Penal Code.

\* \* \* \*