TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 96-1011 |
| of | : | |
| | : | December 31, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE TOM McCLINTOCK, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a bingo player use an electronic aid in conjunction with traditional bingo cards to notify him when a game has been won?


CONCLUSION

A bingo player may use an electronic aid in conjunction with traditional bingo cards to notify him when a game has been won.

ANALYSIS

In 1976 California voters approved an amendment to the Constitution specifying that "the Legislature by statute may authorize cities and counties to provide for bingo games, but only for charitable purposes." (Cal. Const., art. IV, § 19, subd. (c).) The Legislature implemented this constitutional provision by enacting Penal Code section 326.5.[1] The statute authorizes the playing of bingo where the games are conducted by a specified organization for charitable purposes pursuant to local ordinance. Subdivision (o) of section 326.5 defines "bingo" as follows:

"As used in this section `bingo' means a game of chance in which prizes are awarded on the basis of designated numbers or symbols on a card that conform to numbers or symbols selected at random. Notwithstanding Section 330c, as used in this section, the game of bingo includes cards having numbers or symbols which are concealed and preprinted in a manner providing for distribution of prizes. The winning cards shall not be known prior to the game by any person participating in the playing or operation of the bingo game. All preprinted cards shall bear the legend, `for sale or use only in a bingo game authorized under California law and pursuant to local ordinance.' It is the intention of the Legislature that bingo as defined in this subdivision applies exclusively to this section and shall not be applied in the construction or enforcement of any other provision of law."[2]

In 67 Ops.Cal.Atty.Gen. 528 (1984), we concluded that playing a coin-operated electronic video machine which displayed a facsimile of a bingo card on its screen was not "bingo" as defined in section 326.5. In 70 Ops.Cal.Atty.Gen. 304, 308 (1987), we concluded "that an electronic system of bingo which substitutes a hand computer with stored bingo card matrices for the traditional paper or cardboard bingo cards does not qualify as bingo within the meaning of section 326.5, subdivision (o) of the Penal Code." We are now asked to consider whether the use of an electronic aid in conjunction with traditional bingo cards constitutes the game of bingo as authorized in section 326.5. We conclude that it does.

In our 1984 opinion, we distinguished between playing video bingo and playing bingo with traditional cards: ". . . bingo as conducted . . . with cards . . . is an open and simple game not easily manipulated. The operation of video game bingo would not be subject to similar scrutiny and protection." (67 Ops.Cal.Atty.Gen., *supra*, at 532.)

Similarly, the basis for our 1987 opinion was that the bingo players would not be given traditional cards as required by section 326.5. Rather, each player would have an electronic device linked to a computer storing 50,000 card configurations. A player could purchase up to 40 configurations, which would be electronically transferred to his hand-held device. A paper copy of

---

[1] All references hereafter to the Penal Code are by section number only.

[2] Under section 330c, playing or operating a "punchboard," as a therein defined, is illegal.

the serialized configurations purchased by each player would be maintained by the game operator. The hand-held device would emit a sound when a game was won, and the serial number of the winning card configuration would be displayed, along with the configuration itself. (70 Ops.Cal.Atty.Gen., *supra*, at 306.) We stated:

"Section 326.5, subdivision (o) provides as material herein that `[a]s used in this section "bingo" means a game of chance in which prizes are awarded on the basis of designated numbers or symbols *on a card* which conform to numbers or symbols selected at random." (Emphasis added.) It goes without saying that the handsets at issue herein do not have thereon `numbers or symbols on a card.' There is no card at all. It is only through the computer program that electronic *representations* of bingo cards may be called-up and displayed on the handset's screen. These representations are no more bingo *cards* than persons depicted on a television screen are the persons themselves.

"Furthermore, the term `card' is not an ambiguous term. Nor is there any reason to believe that the Legislature, when it enacted section 326.5 in 1976 intended the term other than in the literal sense. The particular electronic bingo system at issue herein has been just developed in the last several years. Nor are we aware that electronic bingo was prevalent in California in 1976 when section 326.5 was enacted. In short, when the Legislature spoke of `numbers or symbols on a card,' we believe that it means just that, `on a card,' not buried in a computer somewhere to be electronically `called-up.'" (*Id*., at p. 308.)

In the present situation, each player would purchase and receive traditional bingo cards. The cards would have printed on them the required statement, "`for sale or use only in a bingo game authorized under California law and pursuant to local ordinance.'" (§ 326.5, subd. (o).) The electronic aid would be used to notify the player of a winning card. Verification of the winning combination could thus be based upon the bingo card itself. The electronic aid would not interfere or interact with the element of chance in the game, but rather would help determine whether a winning card had been purchased by the player.

As described in section 326.5, subdivision (o), bingo is (1) "a game of chance in which prizes are awarded," (2) "on the basis of designated numbers or symbols on a card," (3) "that conform to numbers or symbols selected at random." In our 1984 and 1987 opinions we concluded that there was no traditional "card," and hence the second element was missing. Here, on the other hand, the combined use of the electronic aid *and* traditional cards will allow each player to meet the requirements of subdivision (o), since the "designated numbers or symbols" are "on a card" as well as being programmed into the electronic aid.

We believe that when bingo players purchase and receive traditional bingo cards, the use of electronic aids in conjunction therewith to ascertain when a game has been won does not remove the game from the scope of section 326.5. The courts have ruled similarly in somewhat

analogous situations. (See *Lubavitch Congregation* v. *City of Long Beach* (1990) 217 Cal.App.3d 1388; *People* v. *8,000 Punchboard Card Devices* (1983) 142 Cal.App.3d 618.)

We conclude that the requirements of section 326.5, subdivision (o), are satisfied when bingo players use, in conjunction with traditional bingo cards, electronic aids to notify them when a game has been won.

* * * * *